## WHITEHILL *against* GOTWALT, surviving CHRISTINE.

### IN ERROR.

The words "grant bargain and sell" in a deed, by the act of the 28th of May, 1715, amount only to a covenant that the grantor has not done any act, or created any incumbrance whereby the estate granted by him may be defeated.

Where a deed, after the description of the property by metes and bounds, and stating the contents, proceeded "being part of fifty-eight acres, and one hundred perches of land, late the property of W. of D. township aforesaid deceased, which was decreed by an Orphans' Court of Y. county aforesaid, held &c. unto M. W. (the grantor) one of the sons of the said W., deceased and which J. W. and other heirs of the said W., deceased, did by their deed of release, grant and confirm unto the said M. W., and to his heirs and assigns forever." *Held,* that these words do not amount to a covenant by the grantor, that W. his father, was seized of an indefeasible estate in fee simple, and that the said estate was vested in him; but amounted to no more than a recital, and a continuation of the description of the land intended to be granted, more especially when that deed contained a covenant of general warranty.

A covenant of warranty runs with the land, and in case of eviction after a sheriff sale of the land, the vendee can maintain an action in his own name for the breach.

Where a plaintiff in covenant, claimed on a covenant of seisin, and also on a covenant of warranty, and the court below charged the jury erroneously on the covenant of seisin, the judgment will be reversed, although the court may have charged rightly on the covenant of warranty.

This was a writ of error to the District Court of *Lancaster* county; and the record returned shewed that the suit was originally instituted in the name of *George Christine* and *Andrew Gotwalt,* for the use of *George Christine,* as plaintiffs below against *John M. Whitehill,* the plaintiff in error as defendant. It is an action of covenant, brought for the breach of certain covenants alleged to be contained in a deed of conveyance of ten acres of land made by the plaintiff in error to *George Christine* and *Andrew Gotwalt,* dated the 27th day of July, 1814. The deed is recited and set forth in the declaration, which states that the plaintiff in error, and his wife, by their certain indenture &c. "in consideration of twelve hundred dollars to them in hand paid by *George Christine* and *Andrew Gotwalt,* did grant, bargain and sell, alien, enfeoff, release and confirm to the said *George Christine* and *Andrew Gotwalt,* their heirs and assigns a certain tract of land, situate in Bellam township in the county of *York*" described by certain metes and bounds set forth in the deed "containing ten acres neat measure, *being part of fifty-eight acres and one hundred perches of land late the property of John Whitehill of Donegal township* aforesaid deceased, which was decreed by an Orphans' Court of *York* county aforesaid held the 15th day of September, 1812, unto *John M. Whitehill*" (the plaintiff in error) "one of the sons of the said *John Whitehill* deceased, (and which *James Whitehill,* and others the heirs of the

40

said *John Whitehill*, deceased,) did by their deed of release, grant and confirm unto the said *John M. Whitehill*, (party hereto) and to his heirs and assigns forever, to have and to hold the said ten acres of land with the appurtenances, unto the said *George Christine* and *Andrew Gotwalt*, their heirs and assigns forever, subject to the quit rent then due thereon or to become due to the proprietary *William Penn*, or his heirs." And further, "the said *John M. Whitehill* and wife, for themselves their heirs, executors and administrators did thereby covenant promise grant and agree to and with the said *Geo. Christine* and *Andrew Gotwalt* their heirs and assigns that the said *John M. Whitehill* and wife and their heirs, the above described ten acres of land hereditaments and premises thereby granted and released or mentioned, or intended so to be with the appurtenances unto the said *George Christine* and *Andrew Gotwalt*, their heirs and assigns, against them the said *John M. Whitehill*, and his wife and their heirs and assigns, and against all and every other person or persons whomsoever lawfully claiming, or to claim, the said above described ten acres of land, or any part thereof, should and would warrant and forever defend &c." The whole of the purchase money, was stated to have been paid by *Christine* and *Gotwalt* and the possession of the land to have been delivered to them by *John M. Whitehill*. The breaches assigned were that "neither he the said *John M. Whitehill*, at the time of making his indenture and conveyance as aforesaid, nor his father the said *John Whitehill* before and at the time of his death, had any lawful right or title to the said ten acres of land or any part thereof or property in the same, or to or in the said fifty eight acres and one hundred perches of land or any part thereof, represented, stated, and declared by the said *John M. Whitehill*, in the said indenture to have been the property of his said father *John Whitehill*, deceased, at the time of his death; of which he the said *John M. Whitehill*, in and by the said indenture represented stated and declared the said ten acres to be part and that no lawful right or title ever was derived to the said *J. M. Whitehill*, from his said father under or by virtue of the aforesaid decree of the Orphans' Court aforesaid of *York* county. Nor did the said *James Whitehill* and others the heirs of the said *John Whitehill* deceased, by their deed of release grant and confirm unto the said *John M. Whitehill*, his heirs and assigns the said ten acres with the appurtenances or any part thereof, as the said *John M. Whitehill* has represented, stated and declared in the said indenture, but that at the time of the sealing and delivery of the said deed, and at the time of the death of the said *John Whitehill*, the lawful right and title to the said ten acres and the appurtenances and the said fifty eight acres and one hundred perches of land were vested in *John Penn* and *William Penn*, late proprietaries of *Pennsylvania*, as part of their mano

(Whitehill *v.* Gotwalt.

of *Springetsbury*, in the said county of *York*, and so the said *George* and *Andrew* say that the said *John M. Whitehill*, fraudulently and deceitfully, represented, stated and declared in the said indenture to the said *George* and *Andrew*, that the said ten acres of land, with its appurtenances were the property of the said *John Whitehill*, deceased at the time of his death, that the said ten acres became vested in him and his heirs and assigns, by the aforesaid decree and the release of the said *James Whitehill*, and the other heirs of the said *John Whitehill* deceased, when in truth and in fact, no such right and title were vested in his said father, *John Whitehill*, deceased, or in him the said *James Whitehill* and others, the heirs of the said *John Whitehill*, deceased, at the time of the sealing and delivery of the said indenture, or at any other time before, whereby the said *John M. Whitehill* hath not kept with them his covenants aforesaid but hath broken them, and hath not kept and fulfilled his covenant of warranty aforesaid, but hath broken the same in this behalf, that at the time of the sealing and delivery of the said indenture, the said *John M. Whitehill*, had no lawful right and title to the said ten acres of land neat measure with the appurtenances, nor was he lawfully seized in fee simple thereof, nor had right or title to convey the same, but that the lawful right and title to the same at the time of the execution of the said indenture, were vested in *John Penn* and *William Penn*, who were lawfully seised in fee simple of the said ten acres with the appurtenances, as part of their manor of *Springestsbury* in the county of *York* aforesaid; and that the said *John Penn* and *William Penn*, aforesaid, to wit: on the first day of November, 1816, entered into possession of the said ten acres of land with the appurtenances, and evicted the said *George* and *Andrew* out of the same, and now lawfully hold the same in fee simple."

The plaintiffs below, on the trial of the cause, shewed clearly that the title to the ten acres as well as to the residue of the 58 acres. and one hundred perches, was in the *Penns*. That it never had been vested in *John Whitehill*, the father of the plaintiff in error; although he had claimed and been in possession of the fifty eight acres, and one hundred perches, for several years during his life, and down to the time of his death, under a warrant, dated the fifteenth of April, 1763, in the name of a *James Bailey*, and a survey made thereon, the 26th of the same month, including this with other land and a regular chain of conveyances from the warrantee to himself.

The plaintiffs in the court below, also gave in evidence, a deed of conveyance, dated the third of April, 1816, from *John Kaaffelt* sheriff of *York* county, shewing a sale of all *Andrew Gotwalts's* undivided moiety, or half part to. *Christine* his co-tenant

(Whitehill v. Gotwalt.)

and co-plaintiff in this suit; by which *George Christine*, became the sole owner and claimant of the land under the conveyance from the plaintiff in error.

A verdict was given for the plaintiffs and the errors assigned, material to be noticed, turned on the construction of the deed of the 27th of July, 1814, from *John M. Whitehill* to *George Christine*, and *Andrew Gotwalt.*

*Montgomery*, for the plaintiff in error

Contended that the recital in the deed did not amount to a covenant of seisin. Among the formal parts of a deed, recitals are not enumerated, but are usually inserted in the *premises*, and have not such importance, as would be imparted to them if covenants of seisen and title are to be drawn from them. 2 *Bla. Com.* 297. To infer a covenant of seisin here would be wholly inconsistent with the express covenant, that the property conveyed was subject to quit-rents, for the former would be broken at the execution of the deed by the existence of the incumbrance of such quit-rent.

When there is an express covenant it takes away all covenants by implication *Noke's case*, 4 *Coke* 80. *Frost* v. *Raymond* 2 *Caine's Rep.* 88. Here there is an express covenant of general warranty, and a covenant for further assurance, and it would do manifest injustice to imply a covenant in the face of these covenants. Implied covenants are not permitted to be broader than express covenants, which are clear of all doubt or difficulty as to the meaning of the parties. *Kent.* v. *Welch*, 7 *John Rep.* 488. *Vanderkarr* v. *Vanderkarr*, 11 *John. Rep.* 122. *Jackson* v. *Hoffman*, 9 *Cowan.* 271. *Duncan* v. *Kieffer*, 3 *Binn*, 126.

An implied covenant cannot exist in a deed which has an express covenant to which such implied covenant is repugnant; and the covenant of seisen which is asked to be implied here, and was broken when the deed was executed, is repugnant to the covenant of warranty, which would be broken only on eviction, or the covenant for further assurance, which would not be broken until a demand for further assurance was made. The recital is usually the work of the conveyancer, and is here but a mere description of the property conveyed. To imply covenants from such recitals, would be dangerous doctrine, involving parties in fancied covenants which they never made.

But he denied that a covenant of seisin was properly laid in the declaration, in which great precision is required. *Ami. Pre.* 299, *Carpenter* v. *Alexander*, 9 *John. Rep.* 291. 3 *Caine's Rep.* 73. A breach of a covenant of seisin is set out, but such covenant itself is not, nor is the deed set out in *his verbis.* The covenant of warranty is set out in the declaration; but if both were set out, there is but one assignment of breaches, and it is doubtful to which of these covenants the assignment of breaches applies. Where

(Whitehill *v.* Gotwalt.)

there are two covenants set forth there should be an assignment for each. He referred to a manuscript opinion of the Supreme Court delivered by *Tilghman* C. J. in the case of *Freeman* v. *Pennock's Administrator.** He referred also to 2 *Mas. Rep.* 433. and 4 *Mass. Rep.* 408.

* FREEMAN *against* PENNOCK.

Tilghman, C. J.—This is an action on the case founded on an agreement alleged by the plaintiff to have been made between *John Pennock,* the intestate and *Dr. Clarkson Freeman,* the defendant below; respecting the purchase of a tract of land in the state of *Ohio,* each party was to pay a moiety of the purchase money, and the deed was to be taken in the name of *Freeman,* who was to hold one half in trust for *Pennock,* and convey it to him on demand. The purchase was made according to the agreement; the money paid equally by the parties; and the deed of conveyance executed to *Freeman* alone, who afterwards in the lifetime of *Pennock* refused to acknowledge the trust or to convey a moiety to *Pennock,* though required by him so to do, *Pennock* left a widow who died pending this suit, and one child, an infant. Two bills of exception were taken to evidence admitted on the trial, and one general exception to the charge of the court. The first exception was to the admission of *Jacob Miller* the plaintiff as a witness. Previous to his being offered as a witness, it was proved that his administration account was settled, and he executed a release which divested him of all interest in the estate of the intestate, so that his liability to cost was the only obstacle to his competency, and to remove this objection, eighteen dollars, twelve and a half cents costs, which had already occurred were paid by *John Yentzer,* guardian of *Franklin W. Pennock,* the only child of the intestate and a recognizance to the defendant in the sum of one thousand dollars, was entered into by *James Hopkins* and *Wm. Jenkins,* Esqrs., conditioned for the payment of all costs incurred, and to be incurred in the prosecution of this suit, to the said *Dr. Freeman,* and which may accrue to him and all the officers of the court, witnesses produced by him and all others entitled to costs, to the final determination of the cause, if the same should be determined in favour of the defendant, the same being legally taxed against the plaintiff in this cause. In the argument on this bill of exceptions, many points were made of which it is unnecessary to take notice as there is one decisive objection to the plaintiff's competency, and that is that inasmuch as this recognizances, covered those costs only which should be incurred, on the part of the defendant, the plaintiff remained answerable for his own costs, which in case of a verdict in his favor he would recover against the defendant, he was therefore, immediately interested in the event of the suit, and ought not to have been admitted as a witness. It will be understood that the court gives no opinion, whether the witness would have been competent if the recognizance had been, so drawn as to include all the costs both of the plaintiff and the defendant.

The second bill of exceptions, was to the admission of parol evidence, to prove the contents of a paper which was once in the possession of the defendant. The counsel for the defendant objected to the evidence, because no notice to produce it had been given to the defendant. The plaintiff's counsel admit the general rule, that no notice is necessary, but contend that the paper in question was of no importance, and created no obligation, that it was the property of the defendant and might be destroyed by him at pleasure, and therefore that it was unnecessary to give him notice to produce it. This paper according to the account given of it by the witness who proved the contents, contained a statement in the hand-writing of the defendant of the money paid by the defendant, and by *J. Pennock,* respectively towards the purchase of the lands in which they were partners. It was not signed by the defendant but was produced by him to the plaintiff. Now when it is considered that the parties were at issue respecting the existence of a partnership, it will appear at once, that the paper was extremely important because it proved The partnership by the written confession of the defendant. Whether it created any

(Whitehill v. Gotwalt.)

*W. Hopkins & Hopkins* for the defendant in error.

The recital as it has been called contains the assertion of a material fact amounting to a covenant of title. The words used "being the property," import the highest right which can be acquired over real or personal estate. 5 *Jacob's Law Dic.* 332. It was a plain covenant of seisin, and has been so solemnly decided to be by this court, from which the court below took the law given

obligation and whether it was the property of the defendant and might be destroyed by him without blame, are questions of no moment. The paper itself was better evidence, than parol testimony of its contents and therefore the defendant should have had an opportunity of producing it. It was plainly within the rule which required notice, and the parol evidence ought not to have been admitted. The defendant's counsel proposed ten questions, to the president of the court of Common Pleas, on which they requested his opinion to be delivered to the jury and they now complain that several of these questions were not answered. That it is error not to answer a legal question pertinent to the issue, has been often decided. The counsel for the plaintiff say that the charge of the president contains an answer to all the questions proposed. I rather incline to the opinion that the questions are not all answered. But that point is unimportant as this judgment must be reversed for other reasons. But as it is often matter of dispute whether the questions proposed to the court have been answered, I will suggest a mode of proceeding in such cases which will prevent all probability of dispute, and that is to give the opinion on each question in writing immediately following the question. When the judge, instead of doing this, gives a general charge in which he intends to answer all the questions proposed to him, it may sometimes happen that there may be an omission, or it may be doubtful whether there is an omission or not. These doubts have frequently occurred, and pains should be taken to prevent them, as they sometimes occasion the reversal of judgments which this court would wish to support.

But other errors have been assigned in the charge of the president. These may be reduced to two points. Is this action maintainable by the administration of *Pennoc?* If it is what should be the measure of damages? First the objection to the action is, that according to the plaintiff's own shewing there was a resulting trust to *Pennock* for a moiety of the land purchased in partnership and therefore there is an equity in the heir which the administrator has no right to convert into personal property by this suit for damages. We have no evidence of the laws of *Ohio,* but if they recognize the same principles of equity which prevail in other states, there would be an equity in the heir of *Pennock* as to a moiety of the land purchased in partnership, nevertheless if the agreement was parol, as the evidence seems to indicate, and it was broken in the lifetime of *Pennock,* by the defendant's refusal to convey him a moiety of this land, a cause of action accrued, which after his death could be prosecuted by the administrator only. The heir cannot support an action for the breach of promise in the life-time of his ancestor. Whether there may not be cases in which equity would permit the heir to make use of the name of the administrator to recover damage for his own benefit, I will not now enquire because it is evident that any damages that may be recovered in this case, would be for the use of the heir, he being the only child of his father, entitled to the whole estate both real and personal. There is a peculiar reason why the action shall be maintained by the administrator in the present instance and that is, that the courts of *Pennsylvania* have no jurisdiction over lands lying in *Ohio,* and therefore the only relief they can afford on this contract is a personal action, which is very convenient, as both parties reside here. It may be more for the advantage of the heir of *Pennock* to recover damages on this contract, than to resort to a chancery suit in the state of Ohio for the land itself; and if the contract is of such a nature as to,

in charge to the jury, *Christine* v. *Whitehill,* 16 *Serg. & Rawle,* 98. The words "grant, bargain sell" contain, under our acts of assembly, a covenant of siesin, and are also in this deed. But no set form of words is required to constitute a covenant, any form of words which shew that the parties intended to convey a title will amount to a covenant of that title.

It is not properly a recital, which ended with the description of the property, the metes and bounds, but it is a positive averment

give an action for damages, there can be no reason why the courts of *Pennsylvania* should obstruct it. Where two citizens of the same state enter into an agreement respecting land in another state, they naturally look to the laws of their own state, for redress in case of breach of contract and in this reasonable expectation, the court will not disappoint them. Of this the cases of *Penn* v. *Baltimore,* afford innumerable examples, where the court of Chancery compelled Lord *Baltimore,* to a specific performance of articles of agreement for fixing the boundaries between the provinces of *Maryland* and *Pennsylvania.* If we had a court of Chancery, no doubt *Freeman* might be compelled to execute a conveyance to the heir of *Pennock;* but not having such a court, I see no remedy, but by an action on the case, on this parol contract by the administrators of *Pennock.*

2. But if the action be maintainable, what should be the measure of damages? In considering this question I will take for granted that the plaintiff is acting in concert with the guardian of the heir, which from the record I think myself warranted in doing, and under those circumstances if the defendant did upon request refuse to convey a moiety of the land to *Pennock,* in his lifetime, I see no objection to recovering one half of the value of the land in damages. No second action will lie on this contract and therefore the defendant can never again be exposed to answer in damages. But damages to this amount, the defendant says would be unjust, because the heir might afterwards go into the state of *Ohio,* and recover one half of the land. This I cannot suppose, because being contrary to equity it will not be permitted in a court of equity. Where one has a contract for land on which he may support an action at law, he may take his choice to sue at law or seek a specific performance in equity. But he cannot do both, he cannot recover damages at law from his trustee for refusing to convey the legal estate, and then go into equity and recover the estate itself on the ground of a resulting trust, having made his election to sue at law, he must abide by it. It appears that in this case the jury gave the value of a moiety of the land in damages, but the damages were given generally, and the declaration consists of five counts, two of which are said to be bad, by the plaintiff in error. If so, the judgment would be erroneous because the court cannot ascertain on what counts the jury meant to assess the damages. When some of the counts are bad, and no evidence is given in support of them, the court before whom the cause is tried, may amend the verdict by entering it in favor of the defendant on the bad counts, and for the plaintiff on the good counts only, but a court of error knows nothing of the evidence, and can make no such amendment. Let us examine then the fourth and fifth counts in this declaration. The fourth count in the first place sets forth a verbal agreement between *John Pennock* and the defendant, to join in the purchase of a tract of land, containing twenty-five acres, with a saw-mill, &c. for the sum of $1951, of which each party was to pay half, and the deed was to be taken in the name of the defendant alone, to be held by him nevertheless as to one moiety in trust for the said *Pennock,* his heirs and assigns; and that the said purchase was accordingly made, a deed executed by the vendor to the defendant alone, in trust as aforesaid, and a moiety of the purchase money paid by said *Pennock.* The declaration then avers that in consideration of the premises, the defendant promised to pay to the said *Pennock* his administrators and assigns, as much money as a moiety of the said land with the appurtenances was reasonably worth, &c. Now what consideration is there for the promise? I confess I can perceive none. The defendant had done every thing which the agreement

(Whitehill v. Gotwalt.)

of the interest which the grantor had in it, and amounts to a covenant of scisin, which so far from being inconsistent with the covenant of general warranty, was altogether coincident with it. But if it be called a recital, recitals will sometimes have the effect of covenants.

The claim of the plaintiff is properly spread upon the record it is for breaches of covenants: which may be stated in the words of the covenant, or according to their legal effect.

In a declaration for a breach of a covenant in a deed, it is sufficient to state that the defendant conveyed to the plaintiff certain lands "in the said deed particularly mentioned and specified" without any further description, *Durham* v. *Pratt*, 14 *John. Rep.* 372, and the breach may be assigned in as general words as the covenant. *Bender* v. *Fromberger*, 4 *Dall.* 440. But the plea of the defendant, "performance with leave" &c. admits the covenants as set forth in the declaration, *Milford* v. *Roads*, 2 *Con. Rep.* 14. 2 *Jacob's Law, Dic* 439 *Vanhorn* v. *Frick*, 6. *Serg. & Rawle*, 90. *Powers* v. *M'Ferran*, 2 *Serg. & Rawle*, 46. *Martin* v. *Ives*, 17 *Serg. & Rawle*, 365, *Fick* v. *Baldwin id.* 161. *Abbott* v. *Allen*, 14 *John. Rep.* 248. *Kellogg* v. *Wilcox*, 2 *John Rep.* 1 *Hamilton* v. *Wilson*, 4 *John Rep.* 72. *Morris* v.

required him to do, he had paid half the purchase money and taken a deed in his own name, in trust for *Pennock* as for a moiety, why then should he pay one half the value of the land or what was he to receive in consideration of such payment? It does not appear that he was to receive any thing. If *Pennock* had agreed to release his equity in the land, it would have been sufficient, for then the defendant would have had title to the whole tract both at law and in equity. It is agreed indeed by the plaintiff's counsel, that the equity of *Pennock*, would have been virtually released by acceptance of half the value of the land. But this kind of argumentative release is not a sufficient consideration to support an assumption. The defendant might have paid his money and then have encountered a suit in Chancery. If the agreement was that *Pennock* was to release his equity, the declaration should have so averred it, and a release should have been tendered, when the money was demanded. I am of opinion therefore that this count is bad because it sets forth a promise without a consideration. The fifth count avers an agreement to purchase in partnership, a purchase made, a deed taken in the name of the defendant alone. The purchase money paid by each in moieties, and as stated in the fourth count, and then assigns a breach of promise as follows viz: "Yet the said defendant, his promise and agreement aforesaid, in no wise regarding since the conveyance of the said tract of land to him as aforesaid, gainsays his said promise and agreement and refuses to hold and stand seized of an undivided half of the said land to and for the use of the said *Pennock* in his life-time and for the use of the legal representatives of the said *Pennock*; since his decease," &c. The substance of the alleged injury is that the defendant has told a falsehood by denying the trust, but that denial has not divested the right of *Pennock;* his equity remains just as strong after the denial as before, nor can any words of the defendant affect it. I cannot perceive therefore that this count sets forth any act or omission of the defendant by which the plaintiff has suffered damage. Upon the whole, then, my opinion is that the judgment should be reversed and a *venire de novo* awarded, and inasmuch as it appears, that the defendant has been compelled to pay the sum recovered, the plaintiff must make restitution.

Judgment reversed and a *venire de novo* awarded.

(Whitehill *v.* Gotwalt.)

*Phelps*, 5. *John Rep.* 49. *Caswell* v. *Wendell*, 4 *Mass. Rep.* 108.
*Nichols* v. *Walter*, 8 *Mass. Rep.* 243. *Harris* v. *Newell*, 8 *Mass.
Rep.* 272. *Wolverton* v. *The Commonwealth*, 7 *Serg. & Rawle*,
276. *Moore* v. *McBride*, 1 *Penn. Rep.* 148, 370. *Wetherow* v.
*Keller*, 11 *Serg. & Rawle*, 272. *Peebles* v. *Reading*, 8 *Serg. &
Rawle*, 495. *Lauman* v. *Thomas*, 4 *Bin.* 58. *Boyles* v. *Kelly*,
10 *Serg. & Rawle*, 217. *Fisher* v. *Larick*, 3 *Serg. & Rawle*, 321.
*Chambers* v. *Mifflin*, 1 *Penn. Rep.* 78. *Star* v. *Bradford*, 2
*Penn. Rep.* 384. 1 *Powel*, 236, 237, 238. 11 *Serg. & Rawle*,
139. *Douglas*, 226, 27, 727. *Lev.* 155. 2 *Com. D. title Cove-
nant D.* 2. 566. 2 *Roll. Ab.* 250. 6 *Vin. Covenant, v.* 423. *Id.
Covenant C. a.* 3. *Cro. Jas.* 359. *Cramer* v. *Bradshaw*, 10 *John.
Rep.* 2 *Mod.* 91.

*Jenkins* in reply.

The notion of implied covenants is derived from the civil law,
and is better suited to an age when courts protected ignorant men,
who could not protect themselves; but they are not consistent with
the spirit of this age when the people are well informed, and can
always guard their interest by express covenants; nor are they
consistent with the policy of our laws, which promote and en-
courage the rapid transfer of property. If they be tolerated, they
will, contrary to the intention of the parties, become more opera-
tive than express covenants. The covenant of seisin is more ex-
tensive than the covenant of general warranty, they conflict with
each other, and where the latter is expressed it must negative the
implication of the former, *expressum facet cessare tacitum.* The
part of the deed relied on for the covenant of seisin is a mere re-
cital, it is in the premises of the deed, and uses the word "being"
which is the language of recital, and contains a description of the
property as being that which his father claimed, or owned: this
was necessary to describe the property.

But the covenants are not set out in the declaration either in *tot-
idem verbis,* or according to the legal effect. The plaintiffs should
have set forth that the defendant covenanted that he was seised,&c.
and the breach. This has not been done.—3 *Cha. Ca.* 101, *Woods,*
conveyancing by *Powell,* 202.

The opinion of the court was delivered by

KENNEDY, J.—In the course of the trial in the court below,
several exceptions were taken by the plaintiff in error to the opin-
ion of the court in receiving and in rejecting evidence. A number
of points of law were also submitted to the court with a request to
give a particular charge thereon to the Jury. It was alleged that

(Whitehill *v.* Gotwalt.)

the court below erred in their direction to the Jury on all these points as well as in their opinions excepted to, on account of either receiving or rejecting evidence, and errors have been assigned here embracing all these matters.

Many of the errors assigned, however, were *abandoned* on the argument, and very properly too, as I am inclined to think, that no better reason could have been given for the assignment of them, than that the points to what they related were decided, not against law, but against the party who made them.

Several of the points submitted to the Court below raise the same question; and all that is material and relevant to the merits of this cause may be disposed of and decided by resolving the three following questions, viz:

1. Do the words, "grant, bargain, sell," under the operation of the sixth section, of the act of the twenty-eight of May, seventeen hundred and fifteen, import a general covenant of seisin, on the part of the grantor, or only a special covenant, that he has not done or suffered any act whereby the estate granted by him may be defeated?

2. Do the words in the indenture "being part of fifty-eight acres, and one hundred perches of land, late the property of *John Whitehill*, of *Donnegal* township, aforesaid, deceased, which was decreed by an Orphans' court of *York* county, aforesaid, held the fifteenth day of September, eighteen hundred and twelve, unto *John M. Whitehill*, one of the sons of the said *John Whitehill*, deceased, and which *James Whitehill*, and others the heirs of the said *John Whitehill*, deceased, did by their deed of release, grant and confirm unto the said *John M. Whitehill*, and to his heirs and assigns for ever," import, or amount to a covenant on the part of the grantor, the plaintiff in error, that his father was seised of an indefeasible estate in fee simple in the fifty-eight acres and one hundred perches of land at the time of his death, and that the grantor became seised of the same in fee simple by means of the father's dying so seised, the decree of the Orphans' court and the releases; and that he was so seised thereof at the time he conveyed by his deed of indenture to the plaintiffs below?

3. Were the plaintiffs below entitled from their shewing to recover for the alleged breach of the express covenant of general warranty contained in the indenture; or can the verdict of the jury and judgment of the court upon it be supported in respect to this covenant, and the alleged breach, if the charge of the court to jury was wrong upon either of the other questions?

(Whitehill *v.* Gotwalt.)

By the sixth section of the act alluded to, upon which the first question arises, it is enacted that "all deeds to be recorded in pursuance of that act, whereby any estate of inheritance in fee simple, shall thereafter be limited to the grantee and his heirs, the words, *grant, bargain, sell*, shall be adjudged an express covenant to the grantee, his heirs and assigns, viz: That the grantor was seised of an indefeasible estate in fee simple, freed from incumbrances done or suffered from the grantor, (excepting the rents and services due to the lord of fee) as also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by express words contained in such deeds, and that the grantee, his heirs, executors, administrators and assigns may in any action assign breaches as if such covenants were expressly inserted."

It is now more than twenty-three years since it was solemnly decided by this court in the case of *Gratz* v. *Ewalt*, 2 *Binn.* 25, that the words "grant, bargain, sell," under this act amount only to a covenant that the grantor has not done any act, or created any incumbrance whereby the estate granted by him may be defeated. And it was so held again in the *Lessee of Cain* v. *Henderson, Ib.* 108; and from that time to the present, has been considered, not only as a settled construction of the act, but as a fixed rule of property in the state, which no power but that of the legislature can alter. See *Dorsey* v. *Jackman*, 1 *Serg. & Rawle*, 52, and *Funk*, v. *Voneida*, 11 *Serg. & Rawle*, 111, where it was recognized as such. Upon this construction of the words "grant, bargain, sell" in the deed, and from the evidence given on the trial of the cause, the plaintiffs had no right to claim a recovery for a breach of any covenant growing out of them. Nor do I conceive that there was any misdirection of the court to the jury on this part of the case.

In regard to the second question, it is contended that the words "being part of fifty-eight acres, and one hundred perches of land, late the property of *John Whitehill*," &c. form no part of the description of the land intended to be conveyed, but constitute a covenant upon the part of the vendor, that the said *John Whitehill*, the father, died seised of an indefeasible estate in fee in the said fifty-eight acres and one hundred perches, whereupon they descended to the plaintiff in error, the grantor in the deed, *James Whitehill* and the other heirs at law of the said deceased; that afterwards the said fifty-eight acres and one hundred perches were decreed to the grantor by the Orphans' court of *York* county under the intestate laws of this State, and that the other heirs of the said deceased, by deed released all their interest in the same to the grantor and his heirs. Thus making it in effect a covenant that the grantor was seised of an indefeasible estate in fee simple; and such seems to

have been the charge of the court below, to the Jury on this part of the case.   I would have been glad to have  convinced myself, if I could, that the charge of the court in this respect was right, because it appears  to  be  in accordance with the opinion of the majority of ,this court, delivered in the same case, on  a  former writ of error; , but  after full deliberation, and a very careful  examination  of the matter,  I feel perfectly satisfied that the charge of  the  court upon this question was erroneous.

It is difficult to imagine why there should have been so much circumlocution merely for  a  purpose that could have been  expressed in one fourth the number of words,  and in terms,  the  import  and object of which could not possibly have  been  mistaken.   Neither can it be believed,  I think that any scrivener, who had been told to insert a covenant of seisin, would have thought of introducing it into the deed in the manner and form of this clause.   This,  however, I admit,  is not of itself,  an insuperable objection to its  receiving such construction as  that contended for by  the  counsel of  the .defendants in error; provided it were  manifest from  the face of  the deed, that it was so  intended by  the parties.   This clause has been considered as being in the form of a recital in the deed:   And upon the authority of some cases referred to,  it has been  urged  that it amounts to a covenant upon the part of the plaintiff in error to the effect before stated.

It may be well first to know the general nature and office of recitals in deeds or instruments of writing.   The author of the Touchstone under the  title Execution of Deeds, page 76, says "A  recital  is the setting down or report of something done before."   By *Lord Holt,*  "It may be made use of  to explain a  doubt of the intention and meaning of the parties, but  it hath *no effect* or *operation.*"  3 *Chan. Ca.* 101.  "It may be repugnant, for it is *no essential part* of the deed." *Com. Dig. Tit. Fait* (E. 1.)   "It does  not even  amount to a *direct affirmation.*" *Co. Lit.* 352  b. "Recitals shall not make any estoppel, for they are not *material;* as when A. reciting that he is seised  in  fee of the  manor of D. granteth a rent  out of it to B.  this shall not estop A. to say he had nothing  in the manor." *Finch's Law,* 33, who cites 33 *Hen.* 6, 20. b.   Neither will a recital operate in a will as a devise; as where the testator in disposing of his personal estate, gave six hundred pounds to his wife to be  paid  to W. W. in full payment of the lands lately  purchased of him,  "and is already estated in part of  a  jointure to my said wife,  during her natural life,  that of *Wiskow, York,* and *Molton,* the lands and tenements there amounting to the value of sixty-three pounds, in all one hundred and thirty pounds, which *being also estated upon my said wife it is in full of her jointure.*"

(Whitehill *v.* Gotwalt.)

The testator in fact had made no such settlement on his wife; yet it was held she took nothing in the lands under the recital. *Wright* v. *Wyvell,* 2 *Vent.* 56. From this doctrine, and these authorities in regard to the general nature of recitals in deeds, &c. and more especially those which dispose of the inheritance of real estate, I conclude that it is not among them that we are to look for the covenants and agreements of the parties. And wherever a recital has been held to amount to an agreement or covenant, in a deed disposing of real estate, it must have been exclusively on the ground of intention, for upon no other principle can it be supported. And without such intention be so clearly and plainly expressed, as that it can neither be overlooked, nor mistaken, a recital ought never to be adjudged to amount to a covenant; otherwise recitals instead of being the *non essential, immaterial* and *inoperative* parts of deeds, as they have been pronounced by the highest authorities, will become greatly the most efficient, as well as most dangerous, by entrapping parties into covenants, which they never thought of, and to which they were never asked to yield their assent.

The first case referred to, and relied on by the counsel for the defendants in error, is *Severn* and *Clerks,* cited from *Powell* on contracts, and reported in 1 *Leo.* 122. It was an action of debt upon an obligation conditioned for the performance of the covenants, articles and agreements contained in a deed poll executed by the obligor, whereby he had assigned a term of years in certain lands to the plaintiff, in which he recited "That whereas he was *possessed of certain lands for a certain term of years,*" in which it was resolved, that if the party had not that interest by a good and lawful conveyance, his obligation was forfeited. It must be observed that this was not the case of the deed passing the inheritance in real estate, but a mere term for years, partaking more of the character of goods or chattels than real estate; where the assignor could have none of the muniments of title, nor even know the origin and chain of title which his lessor had for the land, so as to make an exhibition of them to the party to whom he was about to assign, in order that he might judge for himself, and where the assignee might therefore be supposed to have trusted to the personal responsibility of the assignor for the goodness of the title. It would seem perhaps unreasonable to apply the rule of *caveat emptor* to such cases, as is ever done in respect to purchasers of the inheritance. In the sale of chattels we know that the mere act of selling, implies of itself a warranty of title: but not so with respect to the sale of real estate; for there the purchaser can see the title, and determine upon the validity of it for himself; and the seller is only responsible for it, so far as he is required by the purchaser, and has

(Whitchill *v.* Gotwalt.)

plainly agreed to be bound on his part. I think it also manifest
from the report of this case of *Severn* and *Clerks*, that it was not
upon the matter alone contained in the recital that it was so deci-
ded, but upon that in connexion with the other parts of the deed,
for *Clench*, Justice, said that, "recital of itself was *nothing*, but
being *joined* and *considered* with the *rest of the. deed*, it was ma-
terial, as there." The case of *Johnson* v. *Proctor*, *Yelv.* 175, has
also been relied on, as being directly in point. The ground upon
which this case was decided has been misapprehended by the
counsel for the defendants in error, as well as by the learned Judge
who delivered the. opinion of a majority of this court in this case
upon a former occasion. See 16 *Serg. & Rawle* 112. Indeed *Lord
Elden* seems first to have fallen into the mistake in *Browning* v.
*Wright*, 2 *Bos. & Pull.* 25, and to him most likely the misappre-
hension all round is attributable. He says speaking of it, "the
recital itself amounted to a warranty." In it A. and B. were joint
tenants for years of a mill, A. assigned all his interest to C., with-
out the assent of B., and died. B. afterwards by indenture reci-
ting the lease, and that it came to him by survivorship, *granted the
residue of the term* to J. S., and covenanted for quiet enjoyment
of it, notwithstanding any act done by him. B. also gave the pur-
chaser a bond conditioned to perform the covenants, *grants*, arti-
cles and agreements in the assignment; and the purchaser having
been evicted by C., of the moiety. assigned to him by A. brought
an action on the bond and obtained judgment. The decision of the
court according to the report of the case, is placed most expressly
and distinctly upon the force of the word "*grant*" in the deed of
assignment, which by the Court was held to amount to a warranty
of the title, and that the recital was merely explanatory of the sub-
ject matter of the grant, shewing the extent of it; that it was the res-
idue of the *whole term*, and not an undivided moiety of it that
was granted. The words of the Court are, . "*Proctor* expressly
*granted* by precise words the mill and land, and therefore the con-
dition of the bond being to perform all *grants*, &c. the *grant* be-
ing defective, at first, as to a moiety, which is the substance of the
agreement of the parties, &c."

This case and *Lord Elden's* misapprehension of it, are noticed
by Mr. *Sugdon*, in his treatise on the law of vendors, 574, 575,
who says, "it seems material to refer the case of *Johnson* v. *Proc-
tor* to the true ground of the decision, because if the case turned
solely on the recital, it might perhaps be thought a *general recital*
in a conveyance of the *inheritance* of an estate, that the vendor *is
seised in fee*, which would amount to a *general warranty* and

(Whitehill *v.* Gotwalt.)

would not be *controlled* by the limited covenants for the title—a proposition which *certainly cannot be supported.*"

·Other cases have been cited and referred to, none of which have any other bearing upon the question under consideration, than to shew that no set form of words is necessary to constitute a covenant, provided they clearly import an agreement, are reduced to writing, and under the hand and seal of the party. That they may be contained in a *recital*, or in connexion with an *exception*, or introduced by words of *condition* or with *proviso. Com. Dig. 1it. Covenant A. 2.* But in all these cases the intention to make an agreement must be very clearly manifested, from the language used, or from the whole face of the instrument taken together, otherwise covenants ought not to be implied in regard to the passing of the inheritance of real estate. This brings us to the consideration of the particular words employed in the clause and recital in question. It is admitted that the words "containing ten acres neat measure," which immediately precede the words *"being part of fifty-eight acres, and one hundred perches of land, late the property of John Whitehill, &c."* are part merely of the description of the land intended to be thereby conveyed, but contended that with them the description closes. If it were to be so construed the following words would be without sense or meaning, and of course could not amount to a covenant of any kind. But if they are to be taken in connexion with the preceding words, as I think they must, in order to render them intelligible, they will then be part of the same sentence, and a mere continuation of the description of the land intended to be granted; that is a further explanation of it, which is one of the peculiar offices of a recital in deeds; and almost uniformly the exclusive work of the scrivener; without any regard to the covenants that have been agreed on by the parties and directed to be inserted. It may be as Mr. Justice *Buller* has said in *Browning* v. *Wright,* 2 *Bos. & Pull.* 27, "often difficult to distinguish between the words of the conveyancer and those of the party conveyancing," but in the present case it appears very plain to me that the whole of the ·recital is the project and work of the person who drew the deed, and that he intended it all as mere description of the land about to be conveyed. It is obvious in the first place, that in order to be precise and definite in the description of the ten acres, the courses and distances are set out; and in the next place to make its location generally known to and recognized by the neighbors around, the fifty-eight acres and one hundred perches, and the former holder of them are introduced. Because it was perfectly rational for the scrivener to suppose, that as the fifty-eight acres of land had been possessed, and held by *John*

(Whitehill *v.* Gotwalt.)

*Whitehill* the father for several years, as a distinct tract, separated from all the surrounding lands, every body around had got to know that he claimed it, and all no doubt considered it his property. The word "property" upon which some stress was laid in the argument, seems from the context not to have been used in any technical sense, but merely to show that the same fifty-eight acres, which was held and claimed by *John Whitehill*, the father, in his life time, was the same out of which the ten acres had been struck by courses and distances. The term *property* very often means the thing possessed, as well as the estate or interest which the party possessing it may have in it. And although it is sufficient where the owner in fee of land devises all his *property* in it to pass the fee to the devisee, yet it would not have that effect in a deed. And although it is plainly to be inferred, from the terms of this recital, that it was thought *John Whitehill* the father, was in his life time the owner of the fifty-eight acres in fee, yet it would have been as plainly inferrible if instead of the term "property," the word "farm" or "possession" had been used. Or if in place of the words "late the property of," the words "lately owned by," or "lately held by," or "lately claimed by," had been employed by the scrivener, the same inference and conclusion must have been drawn. In the course of reasoning that has been adopted to shew that the words in question amount to a covenant, the intention and understanding of the parties seem to be left out of view, and an artificial interpretation, subversive of the intention, as well as of the rule *caveat emptor* is substituted, in order to meet the event that is said to have occurred. Events which have happened since the making of a deed, or that may have existed before, but were unknown till afterwards, ought to have no influence in the construction of it. And perhaps it is necessary that we should ever bear this in mind, lest we should be tempted to make the deed suit the exigency of the case, instead of what was the original design and intention of the parties.

Can it be believed for a moment, that if the scrivener had been directed to have inserted a covenant of seisin in this deed, that he would have given it in the form that this is? Or if he had been asked the question after he had drawn the deed, whether or not, it contained such a covenant, would he not have promptly answered in the negative? Or if he had been directed to have drawn the deed with an express, limited, and special warranty of title, is there the slightest reason to conclude that he would not have introduced into it the very same clause as part of the description of the land intended to be conveyed? I think but one answer can be given to these questions. It appears from a report of this same case in 16 *Serg. & Rawle*, 107, that on a former trial, the scrivener of the deed was introduced as a witness, and proved that

(Whitehill *v.* Gotwalt.).

this matter of description and recital was in a measure projected by himself, and inserted in the deed; when he knew that no such deed of release as is there mentioned existed. And he proved further that when he spoke of this thing to the parties, and told them, as the grantor said he would obtain the releases in a short time, that he would insert them in the deed, as if already obtained, and not a covenant to procure them. After it was agreed he should do so, then Christine remarked, he must have a *warranty of title.* This shews how the fact was, and what to my mind is perfectly clear from an inspection of the deed itself. That the parties did not mean, and could not have understood and considered that the insertion of all this recital contained, amounted to a covenant or warranty of the title. Because it was after it was mentioned to them by the scrivener, how he would do it, that *Christine* added that he must also have a warranty *of the title;* and accordingly an express covenant of general warranty was inserted, and it does not appear that any other was spoken of. This express covenant of general warranty, if not sufficient in law to prevent a general covenant of seisin from being raised by implication, is at least a powerful objection against the implication of it from words of dubious import, not amounting to an express covenant, or which otherwise, upon the rule that words in a grant shall be construed most strongly against the grantor, might be sufficient to turn the scale against him. To say that such words as are contained in the recital under consideration, connected with the description of the land intended to be conveyed, shall amount to a general covenant of seisin, would in my mind go to defeat the intention and design of the parties to many deeds that have been executed containing no other express covenant than that of a special warranty; and where it was intended, that in no event should the grantor be responsible unless for claims that should come clearly within the terms of the special warranty: For in many cases of express special warranty, the subject of the grant will be found to be described in a manner, and in terms importing a general covenant of seisin, as strongly as in the present case. In the case of *Windham* v. *Windham, Dyer,* 376 b, more fully reported in *Ard.* 58, the deed of feofment described the messuage that was the subject of the grant by stating its locality, and then superadded the words "lately of *Richard Cotton,*" which was untrue. It had been owned by *Thomas Cotton,* not *Richard,* yet no one appears to have ever thought it amounted to a covenant, on the part of the feoffor, that *Richard Cotton* had been the owner of the messuage. It was considered by all merely a part of *the description;* and the only question made was, whether it could be so construed as to embrace the messuage in D. of which *Thomas Cotton* had been the owner, and it was held that the words "messuage with the appurtenances in D.," were sufficient of them-

42

selves; and the words "lately of *Richard Cotton*," were rejected as surplusage. In conclusion on this second branch of the case, I recur to the case in the Year Book 33 *Hen.* 6. 20 b. cited already from *Finch's Law*, 33, where A. reciting that he was seised in fee of the manor of D. granted a rent out of it to B. This shall not estop A. to say, that he had nothing in the manor. This I consider a much stronger case in favor of raising a covenant of seisin, because it was a recital in express and technical terms that he the grantor was seised in fee, and yet it was held not even sufficient to operate as an estoppel.

I fully concur in the principle laid down by the late Mr. Justice *Yeates* in the case of *Gratz Lessee* v. *Ewalt*, 2 *Bin.* 102, that "in conveyances of real estate there must always be great danger in implying any thing that is not *stipulated in clear and precise* terms. This is the safest way of determining the extent of a grantor's responsibility." I am therefore, upon the view I have taken of this question, decidedly of opinion that this clause in the deed does not amount to a covenant of seisin, that it was not so intended, and that there was error in the charge of the court below on this point to the Jury.

The third question now presents itself for consideration. In the argument of this cause, the declaration was spoken of by the counsel as containing two counts, and seems to have been treated in the District Court on the trial as if it were so. In truth it contains only one; but it is not material whether two or one, for every clause, and part of the deed, which it was supposed might possibly be construed into a covenant, either expressed or implied, that would enable the plaintiffs below to get clear of the land, and to recover back the purchase money with interest, are set forth in it and breaches assigned. The Court below in their charge to the Jury on the express covenant of general warranty, and the breach thereof set forth in the declaration laid down the law *correctly* enough, when they said, that without an eviction of the vendees, or a surrender by them of the land to a paramount title, there could be no breach of this covenant. But still, inasmuch as the Court erred in their charge to the Jury on the second question, which has been already considered, the verdict and judgment of the Court below cannot stand. For agreeably to the charge on the second question, the Jury were clearly bound to give the verdict they did, and it became altogether unnecessary for them to consider whether there was an eviction or not. Indeed I cannot perceive from the paper book, although it professes to set out the evidence given on the trial, that there was any attempt to prove an eviction, or that the plaintiffs below were at any time disturbed in their possession of the land by the *Penns*, their heirs, assigns, or any body else. From the evidence given by the plaintiffs below, and the time at which they have in their declaration charged the eviction, I have great doubts

(Whitehill *v.* Gotwalt.)

whether it be practicable for them to make out a case that would entitle them to recover for the breach of this covenant of general warranty.    The eviction is stated in the declaration to have been made on the first day of November, eighteen hundred and sixteen. But they proved that on the third of April preceding all the right and interest which *Andrew Gotwalt* had in the ten acres of land and its appurtenances were conveyed to *George Christine,* who had been his co-tenant, and also the co-plaintiff in this case in the Court below, by the sheriff of *York* county, who had sold the same under judicial process to *Christine.*    Immediately after *George Christine* got his deed of conveyance from the Sheriff, it may be supposed, that he got sole and exclusive possession of the whole of the ten acres; and if so it is not easy to imagine how *Andrew Gotwalt* could have been evicted afterwards on the first of November, eighteen hundred and sixteen, jointly with *George Christine.* Besides, *Gotwalt,* on the third of April preceding, ceased to have any interest in, or right to the land, and could sustain no injury whatever by a subsequent eviction of *George Christine.*    *Gotwalt* had in effect parted with all his interest in the land, and received the purchase money, without making himself accountable in any event, for the goodness of the title.    Literally it was not a sale by himself, yet in effect, the sale by the Sheriff, was the same as if he had sold to a purchaser, who agreed to run all risk in respect to the title.    If any eviction took place after *George Christine* became the sole proprietor under *Whitehill's* title of the ten acres, he alone as it appears to me can maintain an action for it upon this covenant of general warranty.    It is a covenant which runs with the land until broken, and *Christine,* in case an eviction had taken place after he had become the exclusive claimant of the land under *Whitehill's* deed of conveyance, might, as a party to the deed, and the covenant contained in it, for one moiety, and as assignee in law of *Gotwalt's* moiety have maintained an action in his own name, and in this way, only for such breach of the covenant of general warranty.

If there were no eviction anterior to the bringing of this action, it may reasonably be conjectured from what the plaintiff in error offered in evidence, on the trial of this cause, but was objected to by the plaintiff's counsel there, and over-ruled by the court, that none need be apprehended in future.    For from that evidence it would appear that releases in favor of *George Christine,* and *Andrew Gotwalt* were obtained from the widow of *John Whitehill,* the father, and from his heirs in the course of five or six months after *John M. Whitehill* executed his deed, and that during the pendency of this suit, in August, eighteen hundred and twenty four, a complete extinguishment of the *Penn* title in favour of *John M. Whitehill's* vendees was procured, so that all ground of complaint

(Whitehill *v.* Gotwalt.)

set forth in the declaration has been, it would seem, removed, and the heirs of *George Christine* made perfectly secure in their title to the land.

The Judgment reversed and a *venire de novo* awarded.