## SHELTON vs. PEASE.

1. A transfer of property, in contemplation of bankruptcy, to give a preference to one creditor over the others, is a fraud upon the bankrupt act, and may be pleaded in bar of a certificate of discharge under that act.

2. In such plea, it is not necessary to set out the property so conveyed, nor is it necessary to set out the names of the nominal parties to the instrument of conveyance; it is sufficient to set out the names of those beneficially interested.

3. Failure to give notice to a creditor will not vitiate a certificate of discharge.

4. A discharge under the Bankrupt Act of 1841, releases the bankrupt from all claims or demands against him, due or to become due, contingent or certain.

5. Where a deed of conveyance, containing the words "grant, bargain and sell," recites a mortgage existing at the time, on the property conveyed, and contains a special covenant "that the grantor will forever warrant and defend the premises conveyed, against all persons lawfully claiming the same in law or equity, and against all titles, liens, and incumbrances

31

whatever, and particularly against the mortgage above described," the general covenant implied by the words "grant, bargain and sell," is restrained by the special covenant.

6. Such special covenant is not a covenant to pay the mortgage debt.

7. A mere payment of money by the purchaser to buy in an incumbrance, is no breach of this covenant, nor of a covenant of general warranty or of quiet enjoyment. There must be an eviction, or something equivalent thereto, to constitute a breach of these covenants.

8. A covenant against incumbrances is broken by the existence of an incumbrance at the making of the deed. The breach must set out the particular incumbrance relied on.

## APPEAL from St. Louis Circuit Court.

### *Statement of the Case adopted by the Court:*

This was an action of covenant on a deed poll, bearing date 1st June, 1839, whereby it is witnessed that the defendant and wife, for a money consideration expressed, *grant, bargain and sell* to the plaintiff a lot in the city of St. Louis, particularly described, "on which lot of ground there is a mortgage executed by the grantors to Charles S. E. Languemare, dated 17th August, 1837, recorded in the Recorder's office in book R, No. 2, page 237, to secure to the said Languemare the payment of $5,000, with interest at the rate of six per cent. per annum, payable semi-annually—the one half of the said sum of $5,000 payable in five years, and the other half in six years from the date of the mortgage;" to have and to hold the said lot of ground, and all the rights, privileges, &c., unto him the said John G. Shelton, his heirs and assigns forever. And the said Joseph S. Pease, for himself, his heirs, &c., *doth covenant with the said John G. Shelton, his heirs and assigns, against all* persons lawfully claiming or to claim the same, in law or equity, and against all titles, liens and incumbrances whatsoever, and particularly against the mortgage above described to warrant and defend the premises forever.

The original declaration sets out the substance of the deed, recitals and covenants, and assigns as breaches,

1st. That the defendant hath not defended the premises conveyed to the plaintiff against the said mortgage, but has wholly neglected and refused so to do; and by means thereof, the plaintiff was forced and obliged to pay, lay out and expend, and did pay, lay out and expend, $1,432 20 towards the satisfaction and discharge of the mortgage.

2nd. That the lot conveyed was not, at the time of the conveyance, free from incumbrances suffered by the defendant, by means whereof the plaintiff was obliged to pay, and did pay, in and about discharging incumbrances on the lot, $ —

The defendant pleaded to the first breach,

1st. That the plaintiff did not necessarily pay said sum of money in the breach mentioned, or any part thereof, towards the satisfaction and discharge of said mortgage.

2nd. That the defendant did defend the premises against the mortgage.

3rd. A discharge of the defendant as a bankrupt.

To the second breach the defendant demurred generally. The plaintiff took issue on the first and second pleas, and demurred generally to the third. The court sustained the demurrer of defendant to the second breach, and overruled that of plaintiff to third plea—but no judgment was rendered. The plaintiff having asked and obtained leave to amend his declaration, an amended declaration was accordingly filed—upon which, with pleas thereto, the case is now before the Supreme Court.

*Shelton* vs. *Pease.*

The amended declaration sets out the deed of the defendant in *hæc verba,* and then avers that by the said deed it was covenanted that the defendant would pay the said mortgage debt and interest as the same should become due, according to the tenor and effect of said mortgage: that he would warrant and defend the premises conveyed to the plaintiff, against the mortgage—that the lot conveyed was, at the time of the conveyance, free from incumbrances suffered by the defendant—and assigns, as breaches, that the defendant did not pay the said mortgage debt and interest, as the same became due, but neglects and refuses to do so, and the plaintiff paid $1,432 20 towards the satisfaction and discharge of the mortgage.

2nd. That the defendant hath not warranted and defended the premises against the mortgage, but has neglected and refused to do so; and by means thereof, the plaintiff was obliged to pay, and did necessarily pay, $1,500 in discharge of the mortgage.

3rd. That the lot was not, at the time of the conveyance, free from incumbrances suffered by the defendant, and by means thereof, the plaintiff was obliged to pay, and did necessarily pay, a large sum of money in discharging incumbrances to which the lot was subject at the time of the execution of the deed, and which had been suffered by the defendant. The defendant pleaded six pleas to the amended declaration; the third, which is the only one involved in the judgment, is to the whole declaration, and is a formal plea of a discharge under the Bankrupt Law of the United States, upon a petition filed after the making the deed, and a formal decree thereon before the commencement of the suit, discharging the defendant from all debts owing by him at the time of filing his petition.

The plaintiff filed three replications to this plea:

1st. The first alleges that the defendant heretofore, to wit: on the first August, 1842, made a transfer of property, in contemplation of bankruptcy, and for the purpose of giving a preference to a creditor of said defendant, over the general creditors of the defendant.

2nd. That the defendant heretofore, to-wit: on the first August, 1842, made a transfer of property, in contemplation of bankruptcy, and for the purpose of giving a preference to Richard S. Tilden, L. B. Shaw and Mary Brown, over the general creditors of the defendant, with an averment that on the day and year last aforesaid, said Tilden, Shaw and Brown, as purchasers from the defendant of real estate, subject to the mortgage described and referred to in said declaration, had a claim on said defendant for indemnity against liability of the land thus purchased by them against said mortgage.

3rd. That the defendant, fraudulently and with intent to deceive and defraud the plaintiff, failed to give notice according to the provisions of the act of Congress in such case made and provided, to him the plaintiff, to shew cause why the discharge and the certificate in the said third plea mentioned should not be granted.

The defendant filed two rejoinders to each of these replications—the first, third and fifth being formal traverses of the allegations in the pleas. The second and fourth replications allege that the supposed transfers in first and second replications mentioned, were made before the application of defendant for the benefit of the bankrupt law. The 6th rejoinder is to the third replication, and alleges that the plaintiff might have shown cause against the discharge without notice, if there had been any.

The plaintiff demurred to the 2nd, 4th and 6th rejoinders, but the demurrers were overruled, and judgment rendered for the defendant, to reverse which this appeal is prosecuted.

Goode, *for Appellant.*

Geyer, *for Appellee, insists:*

1. The decisions of the Circuit Court, on the demurrers to the second breach, and to the third plea to the first breach in the original declaration—there being no judgment rendered thereon—are

not now the subject of revision; or, if they are, it will be seen that no error was committed by reference to the points made, and authorities cited, on the questions arising on the subsequent pleadings. There is no covenant set out or alleged in the declaration upon which either breach could be assigned, in the manner in which the pleader has assigned them. The covenants in law created by the use of the words "grant, bargain and sell," are restrained by the special covenant in the deed; there is, therefore, no covenant against incumbrances, as the pleader supposed, and if there was, that breach is not well assigned in not stating what incumbrances there were, or when created. The first breach alleges generally that the defendant did not defend the premises, without alleging an eviction, or any thing equivalent to it. The covenant is of warranty against the claims of all persons generally, and specially against the mortgage. It is therefore a warranty of title as against the mortgage, as well as against other claims, or a covenant for quiet enjoyment; and in either case, there is no breach until there is an eviction, or at least a disturbance in the possession.

2. The amended count of the declaration sets out the deed *in extenso,* and the only covenant contained in it is penal, to warrant and defend the lot, (that is, the title and possession) against all persons lawfully claiming or to claim the same, in law or equity, and against all titles, liens and incumbrances whatsoever, and particularly against the mortgage in the deed described, forever.— No covenant in law is raised by the deed, although it contains the words "grant, bargain and sell;" the express covenant in the deed restrains the covenants which would otherwise arise. A covenant has the same effect, whether created by statute or by the common law; both are covenants in law—both raised by implication from certain words not in themselves amounting to a covenant : the one being a statutory and the other a common law interpretation of the words, and both laws being of equal potency and of equal obligation, the effect of a covenant in a deed upon the instrument is in both cases the same. The covenants resulting from the words "grant, bargain and sell," by statute, may be declared on as if expressly inserted in the deed. This is equally true of the covenant raised by the common law on other words. 2 Bac. A., tit. Covenant, B.; Barney vs. Keith, 4 Wend., 502. An express covenant of warranty in a deed qualifies and restrains implied covenants, that is, such as are raised by the common law. Vanderkerr vs. Vanderkerr, 11 J. R., 122. So, general express covenants in a deed are restricted by special covenants—as where the land conveyed is described as containing 600 acres, and the grantor covenanted that the tract did contain 500 acres, and added also generally a covenant of seisin, it was held that the latter is restrained by the former as to quantity. Whallon vs. Kauffman, 19 J. R., 97. The same principle is maintained in Fitch vs. Baldwin, 17 J. R., 161, where a deed contains a covenant of seisin, and a warranty against all claims except the Lord of the Soil; the two covenants must be taken together, and the exception in the last is applicable to both. Cole vs. Hughes, 2 Johns. Ca., 203.— See also 9 J. R., 106, for the same doctrine.

3. There is no covenant, express or implied, in deed or in law, that the defendant would pay the mortgage debt and interest, as the same should become due, according to the tenor and effect of the mortgage;—no such covenant is raised by the common law or statute, nor is it expressed in the deed. The special covenant is to defend the premises against the mortgage; a covenant at most for quiet enjoyment. Vanslyck vs. Kimball, 8 J. R., 198. It is not more a covenant to pay the mortgage than to purchase outstanding titles; the stipulation is the same in respect to both, and must have the same interpretation; it would not be a good assignment of a breach that the grantor had no title. 3 S. & R., 364. In a word, as to the warranty against title, there is no breach without an eviction. Clark vs. McNully, 3 S & R., 364; Twombly vs. Henly, 4 Mass., 442; Greenly vs. Wilcox, 2 J. R., 1; Follard vs. Wallace, 2 J. R., 395. The first breach assigned is therefore bad.

4. The second breach assigned in the amended declaration, purports to be of the express covenant, and is in substance that the defendant did not warrant and defend the premises against the mortgage recited, but neglected and refused to do so; by means whereof, the plaintiff was obliged to pay, and did pay, a sum of money in discharge of that mortgage. This breach is not within

the covenant. The covenant was either of title or possession, or both, as against the mortgage, or for quiet enjoyment; and, in either case, it was necessary to aver an eviction or that which is equivalent. A covenant *to indemnify and save harmless from all demands and damages whatsoever, which might happen or arise on account of a certain mortgage,* is tantamount to a covenant for quiet enjoyment; and the plaintiff must aver and prove an eviction under the mortgage. Vanslyck vs. Kimball, 8 J. R., 198. Covenants of general warranty and for quiet enjoyment are only broken by a lawful eviction of the grantor, or that which is equivalent. Greenby vs. Wilson, 2 J. R., 1; Folleard vs. Wallace, 2 J. R., 395; Walden vs. McCarty, 3 J. R., 471; Kortz vs. Carpenter, 5 J. R. 120; Kent vs. Welsh, 7 J. R., 258; Sedgewick vs. Hollenback, 7 J. R., 376; Vanslyck vs. Kimball, 8 J.R., 198; Vanderkerr vs. Vanderkerr, 11 J.R. 122; Whelback vs. Cook, 15 J.R. 483; Webb vs. Alexander, 7 Wend., 281; Cobb vs. Wilban, 2 Dev., 388; Grist vs. Hodges, 3 Dev., 200; Cowen vs. Sullivan, 4 Dev., 46; Warn vs. Beckford, 9 Price, 43; Duval vs. Craig, 2 Wheat., 45.

5. The last breach assigned is preceded by an averment that the defendant covenanted that the lot was at the time free from incumbrances suffered by the defendant, and alleges that the lot was not at the time free from incumbrances suffered by the defendant, by means whereof, the plaintiff was obliged to pay, and did pay, a large sum of money in extinguishing incumbrances, generally, without stating what incumbrances, or when he paid them off. The deed contains no such express covenant as that averred, nor is any such raised by the statute, (see 2nd point, and authorities there cited) and if there was such covenant expressed, or implied by law, it is restricted by the terms of the deed itself, and modified by the special covenant. Besides, the deed expressly states the existence of a mortgage, and makes an express covenant in relation to it, and it would do violence to the language of the grantor to hold that he covenanted that the lot was free from incumbrances, at the same time reciting one on the face of the deed But upon no interpretation of the deed, is the third breach well assigned; the assignment ought to set out particulars. Marsten vs. Hobbs, 2 Mass., 433; Mitchell vs. Warner, 5 Cow., 497. There is no description whatever of the incumbrances, so as to enable the defendant either to deny their existence or plead their discharge.

6. If it shall be held that the breaches, or any of them, are well assigned, so as to shew a cause of action, the defendant is discharged by his certificate, which is well pleaded to the whole declaration. It is by the act of Congress, a full and complete discharge of all debts, contracts and other engagements proveable under the act;—by the 5th section, all creditors whose debts are not due and payable until a future day, all holders of policies of insurance, securities, endorsers, bail, *or other persons, having uncertain or contingent demands* against the bankrupt, shall be permitted to come in and prove their debts or claims under the act. The adjudged cases in England, under the statutes of that country, and those in the United States under the Bankrupt Law of 1800, are inapplicable to the case. Under those laws, uncertain and contingent demands were not proveable, and therefore not barred by the certificate. The late Bankrupt Law of the United States, 5th section, is more extended, and is purposely so framed as to exclude none from participation in the fund, and to bar all by the discharge.

7. The discharge and certificate pleaded, is declared by the 4th section of the Bankrupt Law to be a complete bar, and conclusive evidence in favor of the bankrupt, unless the same shall be impeached for some fraud or wilful concealment by him of his property or rights of property.

NAPTON, J., *delivered the opinion of the Court.*

One of the principal questions presented by the record in this case, grows out of the certificate of bankruptcy, which is set up in the third plea as a defence to the action. We have been referred to a number of adjudications, made on the British bankrupt laws, and upon our bank-

rupt act of 1800, which tend to show, that under those acts, a certificate of bankruptcy did not relieve the bankrupt from contingent liabilities like the present. It is unnecessary to refer particularly to these cases. They are collated and reviewed by the American editor of Smith's leading cases in a note to the case of Mills vs. Auriol (S. L. C., 436.) The bankrupt law of 1841, is however, in many respects *sui generis* and materially unlike the British statutes or the act of 1800, upon which these adjudications were had. The 4th section provides, that the discharge and certificate granted by virtue of the act, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt, which are proveable under the act, and that the same may be pleaded in bar to any action brought against the bankrupt. The character of the claims, which may be proved under the act, is specified in the 5th section. Amongst other things, it is declared that "all creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties, endorsers, bail, or other persons having *uncertain or contingent demands* against such bankrupt, shall be permitted to come in and prove such debts or *claims* under this act, and shall have a right, when their debts and claims become absolute, to have the same allowed them, &c."

It will be observed that this language is very comprehensive. Lord Coke has said (Co. Lit., 291, b. fol.) that the word *demand* is a word of art, and the strongest word in the law, except the word *claim*, and that a release of all demands releases "all mixed actions, a warranty which is a covenant real, and all other covenants real and personal, conditions before they are broken or performed, or after, annuities, recognizances, statutes merchant or of the staple, obligations, contracts, &c." Now the statute uses both the word *demand* and the word claim, and seems to have designed to effect a complete extinguishment of all the debtor's liabilities, however contingent or uncertain.

Under the Bankrupt act of 1800, no debt, but such as was due and owing at the time of the bankruptcy, could be proved under the commission. The 34th section of the act provided in terms, that the certificate should discharge the bankrupt "from all debts by him due or owing, at the time he became a bankrupt." Such also was the character of the English bankrupt laws, until a very recent period. Eden on B. L., 239. But the bankrupt act of 1841 expressly provides for debts not due, and

for liabilities, contingent and uncertain, and makes the discharge co-extensive with the right to a dividend.

It is admitted in all the cases to which we have alluded, that a bankrupt law may be so framed as to avoid and annul all contracts, existing at the time of the bankruptcy, whether the liability of the bankrupt upon such contracts was fixed at the time of the bankruptcy or depended entirely upon contingencies which might afterwards arise. If language could be selected to convey this idea with precision and certainty, we think it must be conceded, that the framers of this act have succeeded in adopting it.

The first replication to the plea of bankruptcy set forth, that the defendant, on, &c., at, &c. made a transfer of property in contemplation of bankruptcy, and for the purpose of giving a preference to a creditor of said defendant over the general creditors of said defendant.

The second replication avered, that the defendant, on, &c., at, &c., made a transfer of property in contemplation of bankruptcy, and for the purpose of giving a preference to Richard S. Tilden, Lyman B. Shaw, and Mary Brown over the general creditors of said defendant; that heretofore, to wit: on, &c., at, &c., said Tilden, Shaw, and Brown as purchasers from said defendant of real estate subject to the mortgage described and referred to in said declaration, had a claim on said defendant for indemnity against the liability of the land thus purchased by them against said mortgage.

The third replication was, that said defendant fraudulently and with intent to deceive and defraud the said plaintiff, failed to give notice, according to the provisions of the act of Congress in such case made and provided, to him the said plaintiff, to show cause why the discharge and certificate in said third plea mentioned should not be granted.

To the first replication, the defendant rejoined,

1. That he did not in contemplation of bankruptcy make a transfer of property in manner and form as alleged, &c.

2. That said supposed transfer of property was made before he petitioned for the benefit of the bankrupt law.

To the second replication, the defendant rejoined,

3. That he did not, in contemplation of bankruptcy, make a transfer of property, and for the purpose of giving a preference to Tilden, Shaw and Brown, &c.

4. That said supposed transfer was made before he petitioned for the benefit of the bankrupt law.

*Shelton* vs. *Pease.*

To the third replication, the defendant rejoined,

5. That he did not frandulently and with intent to deceive and defraud said plaintiff, fail to give notice, &c.

6. That said plaintiff might, without the notice, have shown cause, if any such existed, &c.

Issues were taken on the first, third and fifth rejoinders and demurrers filed to the second, fourth and sixth. Judgment was given on the demurrer for the defendant.

As the rejoinders demurred to were clearly bad, the demurrer must have been sustained, either because the replications were bad or the declaration did not set out a sufficient cause of action. It is unnecessary to notice the first replication, as the second sets up more definitely the same matter intended to be relied on in the first. This replication, (we mean the second) is based upon the provisions contained in the second and fourth sections of the bankrupt act. The second section declares, that all transfers of property, in contemplation of bankruptcy, and for the purpose of giving any creditor a preference or priority over the general creditors of such bankrupt, shall be deemed void and a fraud upon the act; and the assignees shall be entitled to sue for and receive the same as a part of the assets of the bankrupt, and the person making such unlawful preference shall receive no discharge. The fourth section povides, that if any bankrupt be guilty of any fraud or wilful concealment of his property, or shall have preferred any of his creditors, contrary to the provisions of this act, he shall not be entitled to any discharge or certificate. It is further declared in the same section, that the final certificate may be pleaded in bar to any action brought against such bankrupt, unless impeached for some fraud or wilful concealment of property, contrary to the provisions of the act. A transfer of property, in contemplation of bankruptcy, and for the purpose of giving a preference to any creditor over the general creditors of the bankrupt, is declared to be a fraud upon the act, and this fraud upon the act, is expressly authorised to be set up as an answer to the certificate, whenever it is pleaded. There can be no doubt, then, that the matter intended to be relied on in the second replication, constitutes a sufficient answer to the plea of bankruptcy, if it has been properly pleaded. The objections to the replication are that it does not specify the particular property conveyed, nor the person to whom the transfer was made. If the amount or character of the property transfered could have any influence in determining the nature of the transfer, it should certainly be stated; but

as all transfers, made with the motives and objects specified in the replication, are declared to be frauds upon the bankrupt act, and to avoid the certificate, whatever may be the amount or nature of the property transfered, it cannot be material that these particulars should be stated, unless they are essential to inform the adverse party of the conveyance or transfer intended to be relied on. So also the omission to state the nominal parties to the instrument, which constituted the evidence of the transfer, could not be very material, when the parties, who were benificially interested, are stated.

The third replication is bad. The want of notice for which the statute provides, is nowhere declared to avoid the certificate. The regulations on this subject are directory to the court trying the cause, but a failure to comply with such regulations does not necessarily avoid its judgments. It is nowhere so declared in the act, and upon general principles, it would not have such an effect. If there has been no fraud, and no transfer of property contrary to the provisions of the act, it cannot matter whether every step in the proceeding was regular or not.

The only question remaining to be examined, is the sufficiency of the breaches set forth in the plaintiff's declaration. The deed declared on, contains the words "grant, bargain and sell," and after reciting, that on the lot so conveyed, there was a mortgage executed by the grantor to one Languemare to secure the payment of five thousand dollars, contains a special covenant on the part of the grantor, his heirs, executors and administrators, that he will forever warrant and defend the premises conveyed, against all persons lawfully claiming or to claim the same, in law or equity, and against all titles, liens, and incumbrances whatever, and particularly against the mortgage above described. The breaches assigned in the declaration are :

1. That the defendant covenanted with the plaintiff, amongst other things, that said defendant would pay said mortgage debt, with interest, &c., but that said defendant did not pay said mortgage debt, &c., but hath wholly failed to do so, and that the plaintiff had paid a large sum, to wit: seventeen hundred dollars, in discharge of said mortgage.

2. That the said defendant has not warranted and defended the said premises against the said mortgage, but hath hitherto wholly neglected and refused to do so, and by reason of this said plaintiff was compelled to satisfy said mortgage.

3. That said land was not free from incumbrances, suffered by the grantor at the time, &c.

The first and second breaches in the declaration are founded on the special covenant in the deed. That covenant is a covenant to warrant and defend the title and possession against all liens, and especially against the incumbrance specified in the deed. There is no covenant that the grantor will pay off the mortgage, nor is any such covenant implied by the covenant of general warranty. Nor is the payment of the mortgage by the grantee any breach of the covenant of general warranty, or of the covenant of quiet enjoyment. It seems to be well settled, that a disturbance of the possession is necessary to constitute a breach of these covenants. Among the numerous cases, which are to be found on this subject, both in the United States and England, I have met with none in which a mere payment of money for the purpose of buying in a paramount title or extinguishing a mortgage has been held to be a breach of this covenant. The case of Sprague vs. Baker, (17 Mass. R., 586.) seems to countenance this idea to some extent; but even in that case, whose authority has been much questioned, the payment of the mortgage was made under threats of a suit for possession. There must be an eviction or something equivalent thereto, to constitute a breach of this special covenant.

The third breach is upon the statutory covenant against incumbrances. In setting out a breach of this covenant, it is not necessary to state an eviction, but the existence of an incumbrance at the time of the conveyance is a breach of the warranty. The particular incumbrance relied on, must however be specifically stated; and this brings up the question, whether the special covenant against the mortgage to Languemare, does not restrain the general covenant against incumbrances created by the words "grant, bargain, and sell." In the case of Hesse vs. Stevenson, (3 Bos. & Pul., 574,) Lord Alvanly said, "from all the cases upon this subject it appears to be determined, that however general the words of a covenant may be, if standing alone, yet if from other covenants in the same deed it is plainly and irresistibly to be inferred that the party could not have intended to use the words in the general sense which they import, the court will limit the operation of the general words." Can we suppose, that, where a party in a deed makes a special covenant to warrant and defend against a particular mortgage recited in the deed, he at the same time intends, by a general covenant against incumbrances, to covenant against the existence of this particular mortgage? Can the two covenants stand together? If we allow the covenant against incumbrances to include the mortgage of Languemare, we have a party first

recognising the existence of this mortgage and making a special cove-- nant in relation to it, based upon the hypothesis of its existence and only providing against any disturbance or eviction under it, and at the same time covenanting that the land was free from all mortgages. Upon this construction of the deed, the grantor covenants against an incumbrance, the existence of which he acknowledges in the deed containing the cove- nant. Such a construction does violence to the language of the deed, and the manifest intention of the parties. It is true, that by confining the grantee to his special covenant, he does not reap the same advantages from the payment of this incumbrance, which he would have done had no special covenant been inserted in the deed; but this is the result of the grantee's own choice. He prefers a special covenant framed to suit his own views, we must suppose, to those general covenants which the law would have raised upon the language of the deed, and accordingly protects himself by this special covenant. If the special covenant prove less beneficial than the general one, it is his own fault. Parties are at liberty to make their own contracts, and upon a fair construction of this deed, it seems impossible to doubt, that the grantee designed to protect himself by special covenant against a known incumbrance, and that this special covenant was framed to meet the contingencies against which he desired to provide. That he has misunderstood the character of his covenant and paid up the mortgage, without waiting for a suit, much less an eviction, are circumstances which cannot vary the nature of his deed, or entitle him to relief in an action upon his covenant. The breach of the covenant against incumbrances is therefore not good—be- cause the deed contains no covenant against the existence of the mort- gage to Languemare, but on the contrary recognises its existence, and contains a special warranty against any disturbance under it.

The other Judges concurring, judgment affirmed.