## LYMAN RAYMOND *vs.* THE CITY OF LOWELL.

In a declaration in case, for an injury sustained by the plaintiff, by reason of a defect in a highway, a statement that at the time of the accident, by which the injury was occasioned. "the plaintiff was walking along and across the highway, in the due prosecution of his business, and in a proper manner," is a sufficient allegation, after verdict, that the plaintiff was, at the time, in the exercise of ordinary care.

An inhabitant of another state, who sustains an injury in consequence of a defect in a highway, may bring his action against the town or city bound to repair the same, in any county in the commonwealth.

It is the duty of cities and towns to keep that part of the street which lies between the carriage-way and the sidewalk in such repair that foot-passengers may cross any part thereof with a reasonable degree of safety, using such care and caution as are adapted to the nature of the case; and the establishing of raised crossings at proper distances is not a sufficient compliance with this duty.

In an action against a town or city, to recover damages for an injury occasioned by a defect in a highway in that part thereof lying between the carriage-way and the sidewalk, the defendants may show, as having a bearing upon the question of ordinary care, that in other towns and cities inequalities in the surface of that part of the highway are of common occurrence; but evidence that such inequalities are not deemed to be a portion of the highway, required to be reduced to a level, and to be kept in repair for the use of foot-passengers, is inadmissible.

The projection of the movable grating of a culvert, from one to two inches above the level of the edge of the sidewalk against which it rests, is not a defect, which

shows such a want of ordinary care on the part of the city, as will make them responsible for an injury occasioned by stumbling over the grating.

Where a person, who had occasion to cross in the daytime from one side of a street to the other, selected for that purpose a portion of the street, which, having been necessarily and properly appropriated for a drain, was covered by an iron grating, and, in attempting to cross over the grating, fell and was injured, there being no reason for attempting to cross at that place rather than any other part of the street; it was held, that the passenger, in attempting to cross at that particular spot, was not in the exercise of ordinary care, and could not therefore recover damages of the city for the injury so suffered.

THIS was an action on the case, to recover damages for an injury sustained by the plaintiff, described in the writ as of Manchester, in the state of New Hampshire, on the 5th of October, 1845, by reason of a defect in a street or highway, in the city of Lowell, called Central street. The writ was dated March 1st, 1848.

The declaration alleged, that there was, and for several years had been, in Lowell, a certain public street or highway, which was called Central street, which the defendants were bound by law to keep in a safe condition for all persons to pass thereon without danger or obstruction; that the defendants, regardless of their duty in this respect, had caused and suffered the same to be obstructed and unsafe, and in a dangerous condition, more especially a certain part thereof near the sidewalk, where there was a hole, opening, or culvert, in the street, which it was the duty of the defendants to keep properly guarded, covered, and secure in some manner; that the defendants carelessly and wilfully left the grating or covering of the said hole or culvert out of repair and out of place, and projecting above the sidewalk or curbstone, to the great danger and obstruction of all persons passing along or across the street, of all which the defendants had due and reasonable notice and warning; and that the plaintiff, " on the fifth day of October aforesaid, while walking along and across said street, in the due prosecution of his business, and in a proper manner, was caught and tripped by said covering or grating so out of place and repair, and so projecting as aforesaid, and was thereby with great force and violence thrown upon the ground and greatly injured, and bruised, and maimed, and the knee-pan of his left knee broken and separated, and he rendered lame for

life, and forever incapacitated from pursuing his business, and put to great pain and distress, and great pecuniary expenses in and about the long sickness consequent upon the injury aforesaid, and great loss of earnings and profits on his business."

The case was tried before *Shaw*, C. J., in this court. It was in evidence, that the plaintiff, on the 5th of October, 1845, being on the sidewalk in Central street, in Lowell, near the culvert or hole in question, and having occasion to cross the street, stepped from the sidewalk into the street, for that purpose, near or upon the iron grating of the culvert, and instantly fell and fractured his knee-pan.

The grating was movable, and the edge of it was alleged by the plaintiff, though denied by the defendants, (there being conflicting evidence on this point,) to have projected, at the time of the accident, above the curbstone of the sidewalk, and thus to have occasioned the accident. It was also in controversy between the parties, upon the evidence, whether a movable grating was of itself a defect; whether upon the occasion in question, the plaintiff crossed at or north of the spot where the grating was placed, and so did or did not strike it; and whether the plaintiff, in crossing, used ordinary care, or whether the accident was the result of his want of such care.

The defendants contended, that they were not bound, by law to maintain and keep in repair that part of the highway, forming the dividing line between the carriage-way and the sidewalk, in such manner, that all parts of the street could be safely used by foot-passengers for crossing the streets; and they offered evidence, to show, that safe and convenient crossings, from the sidewalks to and across the carriage-ways of the several streets in Lowell, elevated above the level of the carriage-ways, had been erected and were maintained by the defendants for the use of foot-passengers; and that there was such a crossing, within twelve feet of the place where the plaintiff, according to his own allegation, attempted to cross the edge of the sidewalk.

The defendants also offered to show, by the testimony of the superintendents of streets in Boston and Salem, that inequalities or elevations and depressions in the ridge of the

sidewalk, or of the curbstones dividing the carriage-way from the sidewalks of those cities, were very common, and were not deemed in towns and cities to be a portion of the highway, which was required to be reduced to a level, or to be worked or kept in repair, as part of the highway for foot-passengers, or otherwise.

The presiding judge overruled the objection taken by the defendants, and rejected the evidence offered by them. The jury thereupon returned a verdict for the plaintiff, and assessed his damages at nine thousand nine hundred and seventy-five dollars.

The defendants moved that the verdict be set aside and a new trial granted : — 1st. Because the verdict was against the evidence and the weight of evidence ; 2d. Because the damages assessed by the jury were excessive ; 3d. Because the judge rejected the evidence above recited offered by the defendants.

The facts of the case are sufficiently stated in the opinion of the court on the motion for a new trial.

The defendants also moved in arrest of judgment on two grounds : — 1st. That the declaration contained no allegation that at the time of the accident the plaintiff used ordinary care or caution in attempting to cross the street ; 2d. That if the plaintiff was entitled to maintain his action, it should have been brought in the county of Middlesex and not in this county.

The court directed the motion in arrest of judgment to be first argued.

*S. Bartlett* and *I. S. Morse*, for the defendants.

1. The declaration does not sufficiently allege, that the plaintiff was in the exercise of ordinary care and caution at the time of the accident. *May* v. *Princeton,* 11 Met. 412, 444.

2. This action, by the Rev. Sts. *c.* 90, § 16, should have been brought in the county of Middlesex, being the county in which the city of Lowell is situated. The fourteenth section of the same chapter applies to natural persons only, and does not extend to corporations.

*R. Choate* and *F. Webster*, for the plaintiff.

SHAW, C. J. The first ground of the motion in arrest of judgment in this case is, that the declaration does not sufficiently allege ordinary care on the part of the plaintiff, at the time of the accident which occasioned the injury. It has been long held that the existence of the defect does not of itself alone give the right of action; but that if the party injured was not in the exercise of ordinary care at the time of the accident, he cannot recover, unless the injury was occasioned wholly by the defect, and not in any degree by the plaintiff's negligence. But here, we think, the plaintiff's exercise of ordinary care is sufficiently stated in the declaration. It alleges that the plaintiff was walking " in the due prosecution of his business and *in a proper manner;* " this statement is perhaps imperfect, but it is sufficient after verdict. It falls within the general rule, that after verdict all those facts will be presumed to have been proved, without which the verdict could not have been truly found; if the declaration contains terms general enough to comprehend them by fair and reasonable intendment. In *May* v. *Princeton*, 11 Met. 442, cited at the bar, the declaration was quite as defective as the one now before us; it alleged the accident to have occurred " *by reason of the defects and want of repair aforesaid;* " and it was objected that, under that declaration, evidence that the plaintiff was in the exercise of ordinary care at the time of the accident was inadmissible; but the court overruled the objection, and held that the evidence was rightly admitted. Without deciding whether the objection taken in this case might have been good on demurrer, we are of opinion that it is not open to the defendants after verdict.

The other ground taken by the defendants depends on the construction of the Rev. Sts. *c.* 90, §§ 14, 15, 16. The commissioners to revise the statutes, following the old law, recognized the distinction between local and transitory actions, and they provided, by § 14, that all transitory actions between parties living in the state should be brought in the county where one of the parties lived, and if brought in any other county should be abated; and they inserted § 15 merely to remove a doubt

which might arise in case of two or more plaintiffs or defend-
ants living in different counties. The sixteenth section wav
added by the legislature, in order to remove ambiguity as
to the county in which actions, to which a corporation was
a party, should be brought. In the case of the *Taunton &
South Boston Turnpike* v. *Whiting*, 9 Mass. 321, which was
an action of assumpsit brought in the county of Bristol by a
turnpike corporation, to recover an assessment of one who had
subscribed for shares in the plaintiffs' turnpike, the defendant
pleaded in abatement, on the ground, that the plaintiffs were
a corporation in this commonwealth, and that neither they nor
the defendant resided in the county of Bristol; but the court,
upon consideration, " were satisfied that the plaintiffs, having
no commorancy, were not within the purview of the statute
relied on by the defendants," which was the *St.* 1784, *c.* 28,
§ 13, reënacted in Rev. Sts. *c.* 90, § 14. From this case it
would seem, that before the revised statutes a corporation
might sue or be sued in any county. The object of the legis-
lature, in adding the sixteenth section to *c.* 90 of the revised
statutes, was not to make actions against corporations local
actions, but to give corporations a species of locality, in the
nature of a domicil, and to determine where they should be
held to be resident, for the purpose of suing and being sued.
This section was not intended to limit the last clause of § 14,
which in terms authorizes plaintiffs living out of the state to
bring their actions in any county, but to carry out the general
provisions of law, and apply them in certain cases to corpora-
tions. Taking all the statute provisions together, we think a
transitory action by a plaintiff living out of the state against
a town may be brought in any county, and that this action
therefore was properly brought in Suffolk.

---

After the delivery of the foregoing opinion, the motion to set
aside the verdict was argued by the same counsel.

The opinion was delivered at the March term, 1851.

FLETCHER, J. The plaintiff seeks in this suit to recover
damages for an injury, alleged to have been received by him

on the 5th of October, 1845, by reason of an alleged defect in a street in the city of Lowell. A verdict having been rendered for the plaintiff, the defendants have moved for a new trial for various reasons, two of which relate to certain rulings at the trial.

The accident happened when the plaintiff was about to cross the street, from the sidewalk on one side to that on the other, and the defendants maintained, that they were not bound to keep in repair that part of the highway forming the dividing line between the carriage-way and the sidewalk, so that the same could be safely used by foot-passengers for crossing; inasmuch as safe and convenient crossings were erected and maintained by the city at suitable distances, and as there was such a crossing within twelve feet of the place where the plaintiff attempted to cross.

But this general position was overruled by the judge, who presided at the trial, and as the court now think, was properly overruled. There is no law or principle of law, or of reason, which confines foot-passengers to particular crossings. Such a restriction would be very inconvenient and annoying. The street should be kept in such condition, that foot-passengers may be able to cross, with a reasonable degree of safety, using proper care themselves, at any and all places. The necessity of this might be illustrated very fully by reference to the common and ordinary course of business. A person, who is left by an omnibus in the middle of the street, should be able to go in safety to the sidewalk, at the nearest point, and not be compelled to make his way among the carriages in the middle of the street, till he can reach a place particularly set apart and designated for the purpose of crossing.

In the case of *Cotterill* v. *Starkey*, 8 Car. & P. 691, it was held, that a foot-passenger has a right to cross the carriage road; and that a person driving a carriage along the road is liable to an action, if he do not take care so as to avoid driving against a foot-passenger, who is crossing the road. In the case of *Boss* v. *Litton*, 5 Car. & P. 407, it was held, that a foot-passenger had a right to travel in the middle of the street. Lord Denman said: "A man has a right to walk in the road

if he pleases. It is a way for foot-passengers as well as for carriages. But he had better not, especially at night when carriages are passing along." These cases relate to the rights of foot-passengers, in reference to carriages, but they recognize the general right of foot-passengers to use the carriage-way.

The foot-passengers having such right to use the street, there must be a corresponding obligation on the part of the town to keep the streets in a safe condition for such use. But a town is not obliged to keep all the way, by the sidewalk, in an equally suitable and convenient condition for crossing. This would be wholly impracticable. The necessity of providing for draining off the water requires that streets and sidewalks should be constructed with a view to that object; so, if a foot-passenger, instead of availing himself of a crossing especially prepared, chooses to cross at another place, he must take care and see what is the actual state of the space between the sidewalk and the street. He has no right to assume, that the way from the sidewalk to the street is smooth and even, but must exercise a caution and prudence adapted to the nature of the case.

Another exception taken by the defendants is, that the judge refused to admit the testimony of the superintendent of streets in the city of Boston, and that of the superintendent of streets in the city of Salem, to show that inequalities, or elevations and depressions, in the edge of the sidewalk or curbstone dividing the carriage-way from the sidewalks in those cities, were of frequent occurrence, and not deemed in towns and cities to be a portion of the highway required to be reduced to a level, or worked or kept in repair, as a part of the highway for foot-passengers, or otherwise. The former was permitted to testify, and did testify, as to the matter set forth in the first part of the exception, which was in fact a matter very obvious and known to everybody without any testimony. These particular facts, as to places other than Lowell, were admissible, as bearing upon the question of ordinary care. The testimony, as to the matter set forth in the latter part of the exception, was rightfully excluded, as referring merely to matter of opinion relative to the duties and liabilities of towns and cities.

The other grounds of the motion for a new trial are, that the verdict is against evidence, and that the damages are excessive. The plaintiff alleges in his declaration, that the defendants, regardless of their duty, suffered a certain street called Central street in said city, to be in an unsafe and dangerous condition; by means whereof the plaintiff was thrown down and greatly injured. This allegation it was incumbent on the plaintiff to prove, to maintain his suit, and on this motion for a new trial, it is insisted by the defendants, that the verdict is against the evidence relating to this point.

The liability of towns to keep roads in repair is created by statute, the provisions of which apply equally to the country and to cities. The duty imposed is to keep the ways safe and convenient for travellers. In the performance of this duty, towns are not bound to exercise the highest possible care, — the most anxious and watchful vigilance, — but they are bound to exercise only ordinary care, considering the nature and particular circumstances of the case. A correct understanding of the question before us requires a careful examination of the evidence produced as to this point.

It appears by the evidence, that the city authorities had been obliged to make an opening, at a certain point on Central street, to admit water flowing down the street into a drain or culvert near the sidewalk. At this place, the water from several streets collected, and after heavy rains large quantities were carried off by this drain. The opening into the drain was covered by a large iron grating, so that the water might pass through it, and also that persons might pass over it in travelling along the street. This grate was not fastened down by bolts or otherwise, but was so fixed, that it was supposed its weight would be sufficient to keep it in place. The longer side extended over the hole in the street, and the shorter came up against the sidewalk. The grate had remained in this situation for some time, and used occasionally to get loose. At times there was a great flow of water, and the opening was now and then choked up by floating articles, so that it was necessary to take up the grate, clear away the rubbish, and then put it back. In this way, the grate was sometimes

misplaced, the longest part being turned towards the sidewalk, and the shortest part on the street, thus leaving a part of the hole in the street uncovered, into which horses passing in the street were in danger of falling ; but it was not supposed, that persons passing on the sidewalk, or off from the sidewalk, were in this way exposed to any danger.

This grate, although intended to be kept below the sidewalk, was sometimes found a little above the edge. The weight of the evidence is, that at the time of this accident, the grate was raised one inch and a half, or possibly two inches, above the edge of the sidewalk. The plaintiff says, that he attempted to cross the street at this place, and tripped against the top of the grate, thus raised one or two inches above the edge of the sidewalk, and fell and received the injury of which he complains. There was evidence tending to show, — perhaps the weight of evidence tended to show, — that the plaintiff in fact fell north of the grate, and not by tripping against any thing, but by stepping suddenly off, from the sidewalk down into the street.

But assuming that he fell over the grate, as is alleged, then the evidence to maintain the allegation, that the street was defective, unsafe, and dangerous, amounted to this, that the grate was from one to two inches above the edge of the sidewalk, so that a person attempting to cross in this place might, if he did not raise his foot two inches high, trip against the grate. It was in this way only, that the street was shown to be dangerous. This was the extent of the danger; that is, there was an object against which a foot-passenger might trip, though it was certainly most unlikely and improbable that he would do so. If that makes a street unsafe and dangerous, and shows a culpable negligence on the part of the defendants, then every town is bound to remove every piece of earth, wood, and stone, or other substance, against which any one may, by possibility, strike his foot; and every city must level and smooth down every street and sidewalk, so that there shall remain no unevenness or bad joint, by reason of which any person may possibly be liable to stumble and fall. In short,

45 *

upon this principle, every town and city is bound to do what manifestly never was and never can be done.

There is probably not a single street, in any city in the commonwealth, where there are not substances against which persons would be quite as likely to stumble, as against this inch or two of grate, upon the side of the sidewalk. There is an abundance of such stumbling-blocks all along the streets and sidewalks in Boston. Where there are brick sidewalks, it may be seen by any one passing along, that the bricks have frequently settled, so that the edge stones, for a large part of the length of the streets, rise quite as much above the travelled part of the sidewalks, as did the grate in this case, and are quite as dangerous. Besides, it may be seen all along our streets, directly in the midst of the travelled part of the sidewalk, that the stone gutters, and the stones round the wood and coal-holes and other objects, rise above the level of the sidewalk full as high, and endanger persons passing quite as much, and probably much more, than was done by this grate. In truth, it would hardly have been supposed by any one, that persons passing along the sidewalk, or passing off from it, were exposed to any danger by reason of the inch or two of grate above the edge of the sidewalk. If towns and cities are bound to remove all such things, then they are exposed to indictments for the existence of them. But it can hardly be believed, that there ever was, or ever will be an indictment in such a case and for such a thing. There would be no end to prosecutions, if such a thing should be regarded as furnishing sufficient ground for an indictment.

The statute imposes upon towns the duty of keeping highways in a safe and convenient condition for travellers. This applies equally to towns and cities. But it does not import such absolute safety, as to preclude the possibility of accident or injury. This would be, from the nature of the case, wholly impracticable. Towns and cities are bound to exercise ordinary care and diligence, to keep the highways and streets reasonably and relatively safe and convenient. But they cannot be required to make all their highways equally safe and convenient. This would be impossible. Some roads are laid

over very stony ground; some over hilly ground; some through woods; some are much, and some are little travelled; some are much, and others less exposed to drifts; and towns are re quired to use ordinary care and diligence to keep them safe and convenient, according to the circumstances of each particular case. But they are not bound to keep them absolutely safe, because there is absolute safety nowhere.

A man may stumble and fall anywhere and everywhere, in the house or in the street.. But because he chances to fall in the street, it by no means necessarily follows, that the town is responsible for any injury he may receive. The town cannot be held to insure every traveller against every possible accident and injury, that may happen to him in passing along the highway or street. Towns and cities must exercise ordinary care and diligence to make their highways and streets safe and convenient for travellers. This is the duty imposed on them by the law. For want of this they are liable, and this is the extent of their liability. Upon the whole, therefore, it seems to the court, taking a just, reasonable, and practical view of the liability of towns under the law, that the evidence in this case was by no means sufficient, but was greatly insufficient, to establish the charge, that the street was unsafe and dangerous, as particularly specified, through the culpable negligence of the defendants.

But there was another essential point to be made out affirmatively by the plaintiff, in regard to which it is alleged, that the verdict is against the evidence. The plaintiff was bound to show, to entitle himself to a verdict, that there was no want of ordinary care on his part. The plaintiff was himself required to exercise due and proper vigilance and care, to protect himself from injury. If the plaintiff's own negligence, or rashness, or want of ordinary care, concurred in producing the injury of which he complains, he ought not to have recovered damages for it against the defendants. The burden of proof was on the plaintiff, to show affirmatively the exercise of such due and proper care and vigilance on his part. . Now, the defendants allege, that the verdict is against the evidence on this point.

It appeared by the evidence, that the plaintiff was passing

along Central street, and attempted to pass across the street, at the place where the accident happened, in the forenoon, in open, broad daylight. There was nothing whatever to obstruct his vision, to prevent his seeing every object just as it was situated, at this place. Of course he saw, or was guilty of gross negligence if he did not see, that this spot was appropriated to the purpose and use of a drain to carry off the water. He saw, or was guilty of negligence if he did not see, that the grate extended along the sidewalk only, perhaps, two or three feet. He was within twelve feet of a safe and convenient crossing, particularly constructed for that purpose. There was nothing to hinder his crossing at any point on the street, and he might have crossed at any other point, than the one at which he attempted to cross, with equal convenience to himself. But he chose to cross at that particular place, which had been appropriated to the purpose of a drain, and necessarily and properly so appropriated, and stumbled against the grate and fell. No reason was assigned why he selected this particular spot, in preference to any other point on the street.

If this was an unsafe and dangerous place, and the grate projected above the sidewalk to the great damage and obstruction of all persons passing along or across the street, as is alleged in the declaration, the plaintiff surely could not have exercised ordinary care in exposing himself to the perils of crossing at such a place without the slightest necessity. He could see with ease precisely what the perils were, and could with perfect ease have avoided them. He saw that there was a drain and an iron grate, which would be very likely to present obstacles, if not dangers, in the way of the passenger. He was admonished therefore to be vigilant and watchful, and to take heed to his steps. But, so far as appears, he paid no attention whatever to the objects directly before him, and plainly in view, but stumbled over the grate. There was no difficulty whatever in avoiding the grate; it required no effort to avoid it; and that it was not avoided, can be accounted for only on the ground of a great want of attention and care. Under these circumstances, the finding of the jury, that there was due and proper care exercised, on the part of the plaintiff, seems to be manifestly and decidedly against the evidence.

Another ground of the motion for a new trial is, that the damages given by the jury are excessive; being but a little short of ten thousand dollars. The plaintiff was no doubt seriously and permanently injured. His leg is not likely ever to be as strong as before the injury; and he is not likely to be able to perform as much labor, as formerly, in the business to which he has been accustomed. But still he is able to go about, and to perform some labor. It is very difficult to see, upon what just and reasonable ground so very large a sum could be awarded in damages. If the motion for a new trial stood upon this ground of excessive damages alone, the court would feel very strongly called upon to interfere.

But when the amount of damages is considered, in connection with the finding of the jury, upon the other points in the case, there is strong reason to believe, that the jury must have been carried away by their greatly-excited sympathy for the plaintiff in his misfortune and suffering, rather than have acted according to the dictates of their cool judgment and sound understanding. This court certainly would not disturb a verdict, as being against evidence, but in a strong and decided case. The present case is clearly and emphatically of that character, and imperatively calls for the interposition of the court. The plaintiff, no doubt, has met with a great misfortune; and the suffering to which he has been subjected, and the continued weakness and infirmity of his limb, justly entitle him to the sincere sympathy of all persons, as individuals; but a sound and dispassionate administration of justice requires that this verdict should be set aside.