Wright *vs.* Shorter.

---

AUGUSTUS R. WRIGHT, plaintiff in error, *vs.* ALFRED SHORTER, defendant in error.

(This case was argued at the last term and decision reserved.)

1. Where an imperfect plea, stricken by the court below, on motion or general demurrer, indicates strongly that there is in the facts a meritorious defense, this court will direct that the plea be reinstated on terms, and that the opportunity for amendment be allowed.

2. *Dicta* on the position of guarantors of payment, with reference to diligence by creditors.

3. A general guarantor of payment who has received value in negotiating a note, is not discharged by judgment in favor of the maker in a suit upon the note, unless the judgment was the result of some fault or default in the plaintiff; and if the latter has pursued the case to an adverse termination in the highest court of this state, he is not bound to carry it up to the supreme court of the United States.

4. When bridge and ferry franchises purporting on the face of the grant to be exclusive, are conveyed by deed in fee simple, with warranty of title against the vendor and his heirs only, the purchaser, in the absence of any fraud in the vendor, takes the risk of the grant's proving exclusive or not exclusive in its legal operation.

5. If the grant purport to create franchises which are exclusive for three miles up and down certain rivers, and the vendor represent them to be exclusive, and the price is fixed accordingly, both parties believing them to be exclusive, but being mistaken on account of a defect of legal power in the inferior court to pass exclusive franchises, the purchaser, when sued by the vendor for a balance of the price or upon a contract of guaranty involving such balance, cannot set up the non-exclusiveness of the grant as partial failure of consideration, nor as a ground of recoupment, although the value of the grant as it really is, be much less than the amount already paid on the price, and far less than the value would have been, had the grant been exclusive as it was supposed to be, there being no express warranty by the vendor that it was exclusive, and no fraud by which the vendee was deceived or misled.

6. As the grant in fact existed, although not exclusive, there was a subject matter for the contract to operate upon. The circumstance that the grant is less extensive or less valuable than it was believed to be, does not negative the existence of the subject matter itself but only of some of its supposed attributes.

Practice in the Supreme Court. Guaranty. Promissory notes. Franchise. Roads and bridges. Grant. Warranty. Before Judge BUCHANAN. Floyd Superior Court. January Term, 1875.

Shorter brought assumpsit against Wright, on a written guaranty of the payment of a note on J. L. Cobb and James Morris, security, for $2,500 00, dated July 16th, 1861, and due at twelve months, with interest from date. This guaranty was dated August 14th, 1862, and embraced other notes transferred by defendant to plaintiff, but not involved in this suit. The defendant pleaded, in substance, as follows:

1st. That defendant had no notice of the non-payment of the .note set forth above for three or four years, and in the meantime the makers became insolvent, though worth at the time of the guaranty $100,000 00; that, when the note was transferred, defendant informed plaintiff that it was given for negroes, and informed him also that he, defendant, had been notified that the money was ready to be paid upon call, and that nothing was to be done but to present the note; that plaintiff not only failed to present it or call for the money, but avoided payment by carrying the note to Thomas county, his then residence being known to but few; that plaintiff so avoided the payment of said note because Confederate money, which was the usual currency at that time, and also when the contract was made, was below par; that defendant, having no notice of the non-payment of the note, supposed it paid.

2d. That the note was given for negroes, and such notes having been held void by the courts, the makers were released, and defendant, as guarantor, thereby discharged; that if he had received notice of non-payment, he would have paid it himself or caused it to be paid.

3d. That the consideration of the contract of guaranty had partially failed; that such consideration was a sale and conveyance in fee simple by plaintiff, with warranty against himself and his heirs only, of a half interest in certain described bridges and ferries, and bridge and ferry privileges; that the grant to plaintiff of such privileges by the inferior court purported to be exclusive for three miles up and down the rivers; that plaintiff so represented them, and that both parties entered into the contract of guaranty by mistake, with this understanding; that such privileges were not in reality exclusive, the supreme court having decided that the inferior court had no power to render them so; that the consideration has therefore failed to the extent of the difference in value between the exclusive franchises and franchises not exclusive, amounting to about $20,000 00 or other large sum. This plea also claims the right to recoup in behalf of defendant for such difference in value.

4th. That plaintiff did not use due diligence in suing the note, but allowed three or four years to pass before doing so; that by reason of this neglect the note was lost, because the makers were solvent when the note was transferred to plaintiff, and became insolvent before suit; also, that after suit was brought, plaintiff failed to prosecute it with due care and diligence, and after carrying the case to the supreme court of Georgia, failed to carry it to the supreme court of the United States, where similar decisions of the state courts were afterwards over-ruled.

5th. The general issue.

Upon demurrer, all of the aforesaid pleas were stricken except the last, and the defendant excepted. The jury found for the plaintiff $1,136 36, with interest from July 1st, 1870.

Error is assigned upon the above grounds of exception.

WRIGHT & FEATHERSTON, for plaintiff in error.

R. D. HARVEY; C. ROWELL, for defendant.

BLECKLEY, Judge.

1. This case has been long and anxiously considered; on my part, painfully. The true law of it, in so far as it involves the doctrine of guaranty, seems to me yet not quite free from doubt. Partly for that reason, I gave my consent to a reversal of the judgment, on terms, to afford opportunity for amending the first special plea. That plea, it will be perceived, does not rest simply on the law of guaranty in general, but strongly indicates that at the time the guaranty was entered into there may have been a promise by Shorter, express or implied, that he would call for the money then said to be ready. The plea is defective, (if it be the purpose of it to allege such a promise,) in not setting out what Shoter said on the occasion, or the fact that he was silent, giving ground tacitly to infer the promise. If, by word or conduct amounting to a promise, he induced Wright to believe that he would call for payment and get the money then said to be

ready, and Wright relaxed all vigilance on that account, and did not become aware until after the makers of the note were no longer solvent, that payment had not been called for as he was induced to believe it would be, Wright ought not now to suffer. To make him suffer, under such circumstances, would be to excuse a breach of faith, and overlook an injury to him amounting to substantial fraud. Inasmuch as the note was over-due, and the contract of guaranty fixed no time or place of payment, the writings are, perhaps, not inconsistent with the theory that Shorter was to call for the money then represented to be ready.

2. In so far as the pleas, or any of them, rest alone on the bare law of guaranty, they are overruled by this court, as they were by the court below. Speaking for myself only, I will briefly classify guarantors, and then point out what I take to be the true position of some of them in regard to diligence on the part of creditors: Guarantors, viewed in reference to the *consideration* of their contract, are either mere sureties or more than sureties. They are mere sureties when the consideration of the guaranty moves, not to them, but to the person for whose performance they become bound. They are more than sureties when the consideration is a benefit flowing to themselves: 2 Parsons on Contracts, 21, 22 ; Code, section 2148. Regarded in reference to the *substance* of their contract, they undertake, either for the collectibility, or for the payment of the given debt. A guarantor of any class may, by his contract, limit his liability according to his own pleasure, and stipulate for such diligence or preliminary action on the part of the creditor as he may choose to exact. In the absence of any special terms, the most favored guarantors are those who are mere sureties and guarantee collectibility only ; and the least favored are those who, for a consideration moving to themselves, guarantee payment. If the guaranty be of the payment of a pre-existing debt, and expressed in general terms, the guarantor, if a mere surety, cannot insist on a higher degree of diligence in the creditor than could be exacted in the same case and under the same circumstances, in behalf of

the most favored class of sureties, such as accommodation indorsers; nor can he, if more than a surety, require greater diligence than might be demanded in behalf of the most favored class of debtors receiving value, such as indorsers for value. In some respects, the condition of a general guarantor of payment is less advantageous than that of an indorser, but in no respect is it more advantageous. To gain a better *status* than that of an indorser, the guarantor must vary his general liability by express stipulation. In those states where indorsers are entitled to notice of non-payment, guarantors of similar debts might, upon principle, be entitled to notice also; but not necessarily to equally strict and formal notice, diligence in case of indorsers, being more influenced by reasons of commercial policy than diligence for the behoof of guarantors. Less than commercial expedition, or the ordinary transmission by mail, will scarcely suffice in giving notice to indorsers; whereas, it is sufficient anywhere that guarantors be notified in time to prevent loss by insolvency, etc., with no restriction to the first appropriate opportunity. In states (as in Georgia) where the general rule is, by statute, that indorsers are not entitled to any notice whatever, a guarantor of payment may consistently be denied notice of non-payment, supposing his guaranty to be concerning a class of paper to which the general rule applies. The change of policy which is involved in doing away with notice to indorsers is so radical that its spirit reaches and includes guarantors in like cases. In a system of diligence which expressly dispenses with notice to the former, there would seem to be no place for a rule requiring notice to the latter. The broad *reason* of notice is repealed by a statutory denial of its application to indorsers, they being the great representative class with reference to which the law of notice has, for the most part, been moulded. It would be a striking anomaly for an absolute guarantor of payment to stand discharged for want of notice under circumstances that would leave an indorser still bound. Our statute has been construed to embrace drawers (though not named) and to dispense with notice as to them: 34 *Georgia,*

558; *Powell & Jones vs. Phillips, jr., & Company, January term,* 1876; *High vs. Cox, Ibid.* Compare, however, 41 *Georgia Reports,* 614; 44 *Ibid.,* 63. What has been said of notice will apply, in substance, to demand, bringing suit against the principal debtor, and other acts of diligence. No higher standard of general diligence can be insisted upon by guarantors of absolute payment than indorsers, in the like case, would have a right to call for. Either might give the statutory *notice* to sue, and stand upon the consequent right to special diligence. Were the paper before us "bank paper," negotiated before due, the doctrine of demand and notice of non-payment would still, notwithstanding the statute, apply to it in favor of an indorser, and might apply, to a certain extent, in favor of a guarantor; but the paper has neither of these characteristics. It was guaranted after due, and was payable generally—not at bank. The authorities touching the measure of diligence to which the creditor is bound in favor of a guarantor are very numerous, and not altogether harmonious. Scores of them have been examined in the course of our investigations in this case. They are largely collected in 2 American Leading Cases, 1 to 141. If, as a whole, they can be squared with any general principle, they seem to me not to run counter to the line of thought which I have pursued above. Wherever indorsers and guarantors of payment of pre-existing debts are compared, the latter, I think, will generally be found to be put on a lower plane than the former, never on a higher.

3. The third head-note needs no expansion. It can scarcely be questioned as law; and the plea to which it applies, taken as a whole, presents no valid defense.

4, 5. The fourth and fifth head-notes are full enough; and if in need of authority, will be found supported by 6 Lansing, 56, and 6 Blackford, 389; see, also, 31 Alabama, 435.

6. The ground upon which this case is distinguished from that in 37 *Georgia Reports,* 423, is indicated in the sixth head-note. Here there is a legal subject matter in existence; in that case there was none.

The judgment of the court upon the whole record is as follows: "Reversed, with direction that the court below reinstate the first plea for readjudication, provided the plaintiff in error, after paying all costs incurred on this writ of error in either court, will amend said plea on oath, alleging distinctly the full response of the defendant in error, or his failure to respond, on the occasion of being informed, as now alleged in the plea, touching readiness of the money, etc. If the terms here prescribed be not complied with at the first term of Floyd superior court, let the judgment of the court below stand affirmed; and in either case, let all the special pleas remain stricken except the first."