McDONOUGH & COMPANY *v.* MARTIN.

88  675
126  217

Where the terms of a deed of conveyance, taking the whole to-
gether, show that the instrument is in its essence a quitclaim
title, and that the makers intended no warranty except as against
themselves and their own acts, a failure of the title to two of
the lots out of a great number covered by the conveyance, by
reason of the existence of a previous outstanding better title,
will be no breach of any implied covenant arising out of a recital
of facts or out of the use of words of conveyance, no fraud or in-
tentional misrepresentation being alleged. Nor will the failure
of the vendees to get or to hold possession of such two lots, with-
out any fraud or misconduct on the part of the vendors, consti-
tute a defence to an action for the purchase money or any part
thereof.

January 11, 1892.

Deed. Title. Covenant. Vendor and vendee. Be-
fore Judge HARDEN. City court of Savannah. July
term, 1890.

Reported in the decision.

GARRARD & MELDRIM, for plaintiffs in error
GEORGE A. MERCER, *contra.*

BLECKLEY, Chief Justice.

When this case was decided the syllabus was formu-
lated by the court, handed down and filed. Since then
an argument in elucidation and support of the decision
has been prepared at my request by A. H. Davis, Esq.,
one of our official stenographers. In studying and re-
vising his argument, I have examined every authority
to which it refers. My associates, after hearing it read,
concur with me in adopting it as the opinion of the
court. We do not merely recite it, but make it our
own. For this reason, quotation marks are omitted.

This is an action on a note given for the purchase
money of a large number of lots of land. The plea
sets up : (1) Damages by a breach of the plaintiff's
covenant that the title to the land was in him, and of

the covenant for possession and seizin, the defendants having been evicted from two of the lots by title paramount. (2) Failure of consideration in the loss of two of the lots which the plaintiff covenanted that he owned. The plea makes no issue of fraud, misrepresentation, concealment or mistake. The parts of the deed material to show the undertaking of the plaintiff are as follows:

"This indenture . . between John S. Martin . . Andrew J. Miller . . Cornelia V. Miller the wife of the said Andrew J. Miller . . Sarah E. Miller and R. M. Miller, by their guardian *ad litem* Andrew J. Miller, as parties of the first part, and John J. McDonough and Tiney B. Thompson . . and Edward Burdett . . copartners, composing the firm of McDonough & Co. . . as parties of the second part, witnesseth that, whereas the title to certain lands, hereinafter mentioned as described, is in the said John S. Martin, . . . as evidenced by a certain deed of conveyance made by Henry Gallagher, assignee in bankruptcy of A. J. Miller, . . to said Martin . . and whereas certain portions of the lands described were . . set apart to said Andrew J. Miller as the head of a family, as a homestead, . . and whereas, under a proceeding had before the . . judge of the superior court of Pierce county, certain orders were passed . . authorizing a private sale of the homestead property, in which proceeding all the. parties at interest were duly represented . . .

"Said parties of the first part . . have granted, bargained, sold, remised, conveyed, released and quitclaimed, and by these presents do grant, bargain, sell, remise, convey, release and forever quitclaim unto said parties of the second part, in their full possession and seizin, and to their heirs and assigns, the following lots of land, and all the estate, right, title, interest, use, trust, property, claim and demand whatsoever, both at law and in equity, of said parties of the first part of, in, to or out of all those lots, tracts or parcels of land," etc.

"To have and to hold the said conveyed and released premises unto said parties of the second part, their heirs and assigns, to their only proper use, benefit and· be-

hoof forever, . . so that neither the said John S. Martin or the said Andrew J. Miller individually, or as guardian *ad litem*, as hereinbefore stated, or said Cornelia V. Miller, or said Sarah E. and R. M. Miller, or either of them, their heirs and assigns, nor any other person or persons in trust for them, or in the name, right and stead of any of them, shall or will, can or may, by any ways or means whatsoever, hereafter have, claim, challenge or demand any right, title, interest or estate in or out of said premises above described, and hereby released and conveyed; but that said parties of the first part, and every of them, their heirs and assigns, from all estate, right, title, interest, property, claim and demand whatsoever of, in, to or out of said premises or any parcel thereof . . is, are and shall be by these presents forever excluded and debarred."

The subject here conveyed is described as "the following lots of land and all the estate, right, title, interest, etc., of the parties of the first part." The deed uses appropriate words of release and quitclaim, and lacks the usual covenant of general warranty, which, by the code, §2703, includes covenants of a right to sell, of quiet enjoyment and of freedom from encumbrances. There are no formal covenants at all, except the one against any title, claim, etc., under the parties making the deed.

Covenants are of two kinds, express and implied. Express are those stated in words more or less distinctly exposing the intent to covenant, and implied are those inferred by legal construction from the use of certain words of conveyance. The plea makes it necessary to determine whether this deed contains a covenant of either sort. It is insisted that the recital that the title was in the plaintiff, as evidenced by a certain deed, amounts to a covenant of title, though informally expressed. A covenant requires no special form, but if it is clearly the intention of the grantor to answer for the truth of a statement in the instrument, this will constitute a covenant on his part. There is authority hold-

ing that a recital may have the force of a covenant.   2
Devlin on Deeds, §883 ; 4 Am. & Eng. Enc. Law, 469 ;
Severn and Clerks Case, Leonard 122 ;   Christine v.
Whitehill, 16 S. & R. 98 (Gibson, C. J., dissenting).
Possibly this means that, where the deed is informally
drawn, without any technical covenants, the court may
find an undertaking of some sort in the recital.   For
when there is an express covenant, the recital will not
be construed as an additional covenant.   Whitehill v.
Gotwalt, 3 Pen. & W. 313 (overruling Christine v.
Whitehill, supra) ;   Wright v. Shorter, 56 Ga. 72.   At
any rate, that a recital may ever attain the dignity of a
covenant, is controverted by high authority.   "Owing
to a misapprehension of one or two old cases, the dan-
gerous doctrine has been more than once broached that
covenants for title may be implied from a recital, but
this has since been distinctly and decisively repudiated."
Rawle on Covenants, §280.   And see Ferguson v. Dent,
8 Mo. 667, holding that a recital in the description of
the premises is not a covenant; Delmer v. McCabe, 14
Ir. C. L. 377, holding that a recital of seizin, when modi-
fied and explained by other parts of the instrument,
does not amount to a covenant.   The true rule is to
view the recital in the light cast on it by the rest of the
deed and give effect to the intention as a consistent
whole.   Platt on Covenants, 33 ; Severn and Clerks
Case, supra ; 4 Am. & Enc. Law, 469 ; Code, §2697.
Now if this recital standing alone were equivalent to a
general warranty of title, it would be restrained and re-
duced by the express limited covenant.   Otherwise the
latter, which is set out with much technicality and ver-
bosity, would be nullified and destroyed by the recital
which is mere inducement and not fairly interpretable
as a substantive covenant.   Such a construction would
override the plain intention to covenant specially.
Where a conveyance contains both a general and a

special covenant touching the same subject, which are inconsistent, the general will not enlarge the special covenant, but will be thereby restricted. Rawle, Cov. §287 *et seq.*; 2 Sugd. Vend. (605) *et seq.*; Bricker *v.* Bricker, 11 Ohio St. 240. The order in which the conflicting covenants occur does not seem to be material at the present day, because the intent is gathered from the whole instrument. Rawle, §288, and note. It would seem to be more especially just to let the special covenant prevail where, as in this case, the general covenant not only stands upon implication but is of questionable existence, while the special covenant is expressed with great fulness and regard to technicality. In Hudson Canal Co. *v.* Pennsylvania Coal Co., 8 Wall. 276; the action was brought upon a covenant claimed to exist in the recitals of the instrument which contained technical covenants, the claim being rested on the fairness and equity of that construction (see argument for the canal company). The decision set out in the head-note was as follows: "In the case of a contract drawn technically, in form, and with obvious attention to details, a covenant cannot be implied in the absence of language tending to a conclusion that the covenant sought to be set up was intended. The fact that the non-implication of it makes the contract, in consequence of events happening subsequently to its being made, quite unilateral in its advantages, is not a sufficient ground to imply a covenant which would tend to balance advantages thus preponderating."

Furthermore, if the conveyance is only of the grantor's right, title and interest in the land, the scope of it is not enlarged by a general covenant, but such covenant must be limited to fit the subject conveyed. 1 Warvelle on Vendors, 421 (§8); Allen *v.* Holton, 20 Pick. 458; Sweet *v.* Brown, 12 Met. 175; McNear *v.* McComber, 18 Iowa, 12; Gee *v.* Moore, 14 Cal. 472;

Kimball v. Semple, 25 Cal. 440 ; Bates v. Foster, 59 Me. 157 ; Gibson v. Chouteau, 39 Mo. 536 ; Young v. Clippinger, 14 Kans. 148 ; Stockwell v. Couillard, 129 Mass. 231.

Is any covenant implied in these words : "Said parties of the first part . . do grant, bargain, sell, remise, convey, release and forever quitclaim unto said parties of the second part, in their full possession and seizin . . the following lots of land, and all the estate, right, title, etc., of said parties of the first part," etc. ? At common law certain words of conveyance imported covenants of title, and so strong was the implication it was in some cases held that an express limited covenant could not repel it. It seems now generally agreed that, in conveyances of freehold, only one word "*do*" or "*dedi*," "I give" or "have given," had such potent effect. Rawle, §270 ; Frost v. Raymond, 2 Caines, 188, 2 Am. Dec. 228. The word "grant" did not imply a covenant. Platt, Cov. 47, 48. Nor did "grant, bargain and sell." Rickets v. Dickens, 1 Murph. (N. C.) 343 ; Frost v. Raymond, *supra*. And it has been held that, in a conveyance merely of the grantor's rights in the land, even the terrible word "*dedi*" would not raise a warranty. Deakins v. Hollis, 7 Gill & J. 311. Also it is said that, in a deed of "grant, bargain and sell," an express covenant takes away all implied covenants. Vanderkarr v. Vanderkarr, 11 Johns. 122.

When conveyances came to be made under the statute of uses, the courts did not raise covenants by implication. The deed of bargain and sale came into use under this statute, and it being the deed commonly employed in the United States, as a general rule, in the absence of statute, there are no implied covenants with us. Tiedemann on Real Prop. §859; 3 Washb. Real Prop. *671; Walker's Am. Law, p. 454 (9th ed.); Allen v. Sayward, 5 Me. 227. In some of the States, by

express statute, the words "grant, bargain and sell" import certain covenants. 4 Kent Com. 473, 474; Rawle, §285 et seq.; Martindale on Conveyancing, §173. But where there is also an express covenant, it is held that the statutory implied covenant is modified thereby. Weems v. McCaughan, 7 Sm. & M. 422; Shelton v. Pease, 10 Mo. 473. So the statutory covenant will be restrained, where the conveyance is of the grantor's interest only. Gibson v. Chouteau, 39 Mo. 536. There is no statutory implication of covenants in Georgia, except as to deeds containing a general warranty. Code, §2703. In McDonald v. Beall, 55 Ga. 288, it was held that there is no implied warranty in the sale of land. That being a parol sale and no deed being given, the case does not apply here. The present deed purports to convey the specified lots and the grantors' right, title, interest, etc. in the same. The first part of the descriptive clause, standing alone, might import an intention to pass title paramount, not merely such title as the grantors had. But it does not stand alone; it is followed by a nearly exhaustive catalogue of words signifying any kind of interest which the grantors might have in the land. All this would be useless surplusage, unless it was intended by the grantors to convey simply such title or interest as they had, without undertaking to pass necessarily title paramount. This view is strengthened by observing the words of conveyance which are words of release and quitclaim. Gibson v. Chouteau, supra; Young v. Klippinger, 14 Kans. 148. And also by considering the special warranty which extends solely to title or claim by or through the grantors. Wright v. Shorter, 56 Ga. 72. This special warranty would be rendered wholly nugatory by construing the clause in question as an unqualified undertaking to pass title paramount. The latter part of §2248 of the code is not without application here, by analogy at least. It

says: "If a less estate is expressly limited, the courts shall not, by construction, increase such estate into a fee, but, disregarding all technical rules, shall give effect to the intention of the maker of the instrument, as far as the same is lawful, if the same can be gathered from its contents; and if not, in such case the court may hear parol evidence to prove the intention." The court in trying this case heard parol evidence from both sides as to the sale of these lands, and it in no wise conflicts with the construction put upon the deed. On the contrary, the defendant who made the purchase admitted in his testimony that he was willing to purchase without a warranty if he could be placed in actual possession of the land. In rebuttal he testified that it was agreed that his firm should take the lands without warranty. All the testimony shows it was plainly understood on both sides that there was to be no warranty. The defendants relied upon certain testimony of Mc-Donough as showing the clause containing the expression "in their full possession and seizin" to be a covenant of possession and seizin. But this expression must be taken as qualified by the immediately accompanying words of conveyance, which contemplate a mere release or quitclaim, and, by the subsequent special covenant. Certainly this is not a formal or even a plain covenant for possession and seizin to any extent, much less as against all persons whatsoever; it can have effect as against any acts or title by the grantors or persons claiming under them. The testimony referred to is a very feeble support to the construction contended for. The witness said: "If he could be placed in actual possession of the land, he was willing to purchase the property and waive a covenant of warranty. . . Possession was to be given to defendants, because in their saw-mill business this possession is necessary. It was particularly important that defendants

should have exclusive possession, because they had other timber lands lying beyond these which they wished to reach. . . The grantors knew that defendants were in the saw-mill business, and were fully aware of the use to which defendants expected to put these lots." The witness seems to be speaking of his own state of mind, and not of any agreement of minds. He does not say that the grantors promised or undertook to put defendants in possession. The delinquency here charged consisted in knowing of the use to which the lots were expected to be put, and (it may be inferred) in not making proper provision therefor. The only agreement to which he distinctly swears is this: "It was agreed that his firm would take the lands without warranty." It may be doubted, under authorities presently to be cited, whether this testimony was admissible, because the legal effect or extent of a covenant cannot be varied by parol. But whether admissible or not, it was not strong enough to establish the construction contended for.

Upon the whole, then, it appears that the deed contains no covenant except the special one above alluded to. Does the loss of either of the two lots come within its terms? It is not disputed that the title to lot 104 was once in A. J. Miller, one of the grantors, and was divested by sheriff's sale under an execution against A. J. Miller & Son, five years and more before the deed to defendant was made. The sheriff's deed was duly recorded, and this record was constructive notice to the defendants. Their plea is based, not on fraud, misrepresentation or breach of confidence, but solely on breach of covenant. The loss of this lot does not fall within the latter part of the special covenant, because the title or claim under the sheriff's sale was not set up by any of the grantors but by a stranger. Nor does it come within the first part of that covenant, because that provides against

claims thereafter made by the grantors or by some person claiming under them.   The grantee in the sheriff's deed holds adversely to the defendant in execution, and not under him.   The defendants' deed is a quitclaim purporting to pass only such interest as the grantors had at the time of conveying. . It often happens that persons give such deeds who have no title at all, and the lack of title where no fraud or deception is practiced is no ground for subjecting such a grantor to damages. As to lot 194 which was lost in the ejectment, Miller testified without contradiction that he "told McDonough that a suit of ejectment was then pending for this lot, and McDonough replied that he, Miller, must defend McDonough & Co." This loss likewise is not within the special covenant, because it was an adversity which the grantors could not prevent, unless they were negligent in defending, which does not appear.   Besides, McDonough was notified of the action then pending, and apparently chose to take the risk.   His reply that Miller must defend McDonough & Co. hardly makes a promise by Miller to do it.   Even if Miller had promised, it would not be allowable, where there is no issue of fraud or the like, to attach a parol promise like this to a deed containing no such undertaking.   Anon., 2 Ch. Cas. 19; Raymond *v.* Raymond, 10 Cush. 134; Howe *v.* Walker, 4 Gray, 318; Earle *v.* DeWitt, 6 Allen, 530; Hunt *v.* Amidon, 4 Hill, 345; Coleman *v.* Hart, 25 Ind. 256; Holley *v.* Younge, 27 Ala. 204; and see Peabody *v.* Phelps, 9 Cal. 213.

Now are the defendants entitled to set up as a defence to the notes sued on that they lost the said two lots? This depends upon who took the risk of the title's being good.   The grantors, both in the negotiations and in their deed, expressly declined that risk; consequently the purchasers assumed it.   The law is clear that, where the buyer takes a quitclaim deed, that is a deed without

any warranty, the maxim of *caveat emptor* applies. He is without remedy if the title fails. He cannot recover back the purchase money, either at law or in equity. Dorsey *v.* Jackman, 1 S. & R. 42; Earle *v.* Dewitt, 6 Allen, 530; Soper *v.* Stevens, 14 Me. 133; Bates *v.* Delavan, 5 Pai. Ch. 300; and see Commonwealth *v.* McClanachan, 4 Rand. 482. Equity will not relieve against payment of the purchase money. 1 Foubl. Eq. 373, note; Rawle, §321; Barkhamstead *v.* Case, 5 Conn. 528; 2 Sugd. Vend. 552. Nor can the purchaser have rescission. Maney *v.* Porter, 3 Humph. 346, 363; Middlekauff *v.* Barrick, 4 Gill, 290; Butman *v.* Hussey, 30 Me. 263. Nor can he set up the failure of title in defence to an action for the purchase money. Buckner *v.* Street, 15 Fed. Rep. 365; *Wright* v. *Shorter,* 56 *Ga.* 72. In the case last cited, this court held: "When bridge and ferry franchises purporting on the face of the grant to be exclusive, are conveyed by deed in fee simple, with warranty of title against the vendor and his heirs only, the purchaser, in the absence of any fraud in the vendor, takes the risk of the grant's proving exclusive or not exclusive in its legal operation." In the absence of fraud, misrepresentation or mistake, the purchaser's redress depends solely on the covenants expressed in the deed. If there are no covenants or if the loss is not within the covenants, the loss falls upon him, and will not be thrown back on the innocent vendor. To do this would be to import a condition into the contract that the vendor should repay or lose the purchase money on failure of title, though the parties themselves made no such agreement. In such case, the vendee buys the vendor's title for better or worse, and pays his money, not for the land necessarily, but for the vendor's title such as it is. When he gets what he bargains for, he ought to pay. A vendee can protect himself by requiring the usual covenant of general warranty, or he can

waive that protection by accepting a deed with a limited warranty, or one without any warranty at all. Whichever he selects, he ought to abide by his choice. It will frequently happen that a quitclaim deed is obtained for very much less than a warranty deed would cost. To allow a purchaser by quitclaim to set off against the purchase money a failure of title to some of the land, would force the vendor to part with such proprietorship as he had in the whole tract for less than he agreed to take.

The foregoing discussion disposes of this litigation upon its substantial merits, and though various grounds are stated in the motion for a new trial, they are all controlled as to the result by what has been said. The court did not err in overruling the motion.

*Judgment affirmed.*